No. 49,179

SECURITY NATIONAL BANK, *Appellee,* v. CITY OF OLATHE, KANSAS, *et al., Appellants.*

(589 P.2d 589)

Opinion filed January 20, 1979.

*Allen R. Slater,* of Haskin, Hinkle & Slater, of Olathe, argued the cause, and *Frank H. Jenkins, Jr.,* City Attorney, was with him on the brief for the appellants.

*Charles S. Schnider,* of Shawnee Mission, agrued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the city of Olathe from an order of the Johnson district court finding the city's refusal to rezone certain land unreasonable, and directing the city to grant the requested rezoning. The Security National Bank of Kansas City, Kansas, as trustee, manages the land for the trust which owns it. The bank was the successful party below.

The bank first challenges our jurisdiction to hear this matter. It contends that the notice of appeal was prematurely filed, and no notice of appeal was filed after the entry of judgment. The trial court filed a memorandum decision on December 10, 1976, in which memorandum the court directed the bank's attorney to prepare an appropriate journal entry. The notice of appeal was filed January 5, 1977; the journal entry of judgment was filed January 24, 1977. The bank contends that since the notice of appeal was filed prior to January 10, 1977, the appeal is controlled by the rules of this court then in effect; and that our present rule relating to premature notices of appeal, rule 2.03, has no application to this proceeding since the rule did not become effective until January 10, 1977, in accordance with prefatory rule No. 1.01 (220 Kan. xxix). The bank bases this contention on two earlier cases of this court, *Roe Village, Inc. v. Board of County Commissioners,* 195 Kan. 247, 403 P.2d 970 (1965), and *Guerrero v. Capitol Federal Savings & Loan Ass'n,* 197 Kan. 18, 415 P.2d 257 (1966). While it is true that rule 2.03 was not effective at the time notice of appeal was filed in this case, our earlier rule No. 16, 201 Kan. xxvii, adopted effective July 12, 1967, was applicable. That rule is the predecessor of present rule 2.03, and is almost identical. Rule 16 was in full force and effect at the time the notice of appeal in this action was filed. It provides in effect that a notice of appeal, filed subsequent to the announcement by the judge of a judgment to be entered, but prior to the actual entry of judgment, shall be effective if it identifies the judgment from which the appeal is taken with sufficient certainty to inform the prevailing party below of the rulings to be reviewed on appeal. The bank does not contend that the notice was insufficient in this regard. We conclude that the notice of appeal was timely filed, and this court has jurisdiction to hear and determine this appeal.

The issues on appeal are whether the court abused its discretion in refusing to grant the city's motion for a continuance of trial; whether the court erred in permitting one of the landowner's witnesses, Mr. Butler, to testify as an expert in the field of land-use planning, and in receiving plaintiff's exhibit No. 17 into evidence; and whether the city's denial of the application to rezone was reasonable.

Some ten or twelve days before trial, the city served interroga-

tories upon counsel for the bank, in an effort to learn the substance of the proposed testimony by the bank's expert witnesses, Mr. Ogburn and Mr. Butler. The city then requested a continuance until it could get the information requested in those interrogatories. The trial judge ordered the bank's counsel to provide that information orally to the city's counsel, and the judge overruled the request for continuance.

The grant or denial of a motion for continuance rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse. *Fouts v. Armstrong Commercial Laundry Distributing Co.,* 209 Kan. 59, 64, 495 P.2d 1390 (1972); and see K.S.A. 60-240(*b*), and the cases annotated under that section. No demonstrable prejudice or harmful surprise has been shown in the record before us. In the absence of a contrary showing in the record, we must assume that appellant was substantially informed as to the substance of the expert testimony, and that the experts were fully and fairly cross-examined by counsel.

The city contends that the trial court erred in permitting Mr. Butler to testify as an expert, primarily for the reason that Butler had no degree in land-use planning. He has a degree in civil engineering, and he is president of a firm which does comprehensive land-use planning for many communities. He has been involved in the preparation of these plans, and his testimony discloses a wide and varied background in the field. We conclude that the trial court did not abuse its discretion in permitting the witness to testify as an expert in land-use planning.

Exhibit 17 is a target of the city's next point on appeal. The city contends that the document, a written petition asking that the city of Olathe create a benefit district to pave 119th Street in the area of the land here involved, was not properly identified and was hearsay. The witness testified that he was present at the meeting of the Olathe City Commission when the petition to create a benefit district was presented. The court was advised that the petition was not granted, and the district was not formed. Even if the evidence was hearsay, and we note that the document might come under some of the exceptions to the hearsay rule, no reversible error has been shown. There is no indication that prejudice resulted, and considering the collateral nature of the evidence, the error, if any, was harmless.

We turn now to the major claim of error—that the trial court's finding of unreasonableness is contrary to the clear, compelling weight of the evidence; it was in fact reasonable. The trial judge summarized much of the evidence in his memorandum decision, as follows:

"MEMORANDUM DECISION

. . . .

"2.   That on March 15, 1976, the Security National Bank filed with the City of Olathe an application for rezoning requesting that [a certain tract of land]

. . . .

commonly described as the Southeast corner of 119th and Blackbob in Olathe, Johnson County, Kansas, be rezoned from its present agricultural zoning to the following:

| | |
|---|---|
| RP-3   (Planned Garden Apartments) | 19.9 acres |
| RP-1   (Planned Single Family Residential) | 9.3 acres |
| Rights-of-Way and Utility Easements | 3.24 acres |
| MP-1   (Planned-Restricted-Industrial) | 43.5 acres |
| Total | 74.41 acres |

"3.   That this request was designated as RZ 9-76 by the City of Olathe and was the subject of a hearing before the Olathe Planning Commission on April 12, 1976.

"4.   The application proposed to develop said property a) for a light industrial park on the west, 43.5 acres; b) garden or multi unit apartments adjacent thereto to the east, 19.9 acres; and c) single family dwellings on the rest of said property, 9.3 acres.

. . . .

"6.   The City of Olathe had adopted a comprehensive plan which had been updated for the area surrounding 119th and Blackbob by three land use studies entitled, Section Studies 2, 3 and 4, which were introduced into evidence as plaintiff's Exhibits 9, 10 and 11. The southeast corner of 119th and Blackbob is presently being used for agricultural purposes as is the land to the immediate south and to the east. The land on the southwest corner of 119th and Blackbob has a mixture of agricultural, residential and light industrial uses. The northwest corner of 119th and Blackbob has a mixture of industrial, commercial and two residential uses. The area west of this intersection has been built up and is now used partially for light industry, commercial and residential purposes. The northeast corner of 119th and Blackbob is presently zoned for industrial and there is one industrial building which fronts on Blackbob Road. To the east of this industrial tract is the property owned by Mr. Speer and there is a farm residence and farm buildings on this ground which are presently occupied. Further east on 119th Street, there are scattered residences. The Johnson County Community College is located approximately 1½ miles to the northeast and the county park district owns approximately 80 acres of land immediately south of the college. The southern border of the park property abuts 119th Street approximately 1¼ miles east of the plaintiff's proposed development.

"7.   The Comprehensive Plan, as amended by Section Study 3, provides for

'light industrial' usage at the northwest corner of plaintiff's property of about 16 acres, said industrial area to be ringed to the east and south by an area designed for multi-family dwellings; and then further to the east plan provides for single-family residential development for the rest of said property. Basically, plaintiff seeks an increase from the 16 acres 'light industrial use' to 43.5 acres light industrial use.

"8.  On April 7, 1976, at a public hearing before the Planning Commission, plaintiff's application was denied. The reasons for said denial were as follows:

"a.  'considering the highly speculative nature of the plan';

"b.  'the plan represents a substantial deviation from the master plan';

"c.  'there is almost 2,000 acres currently zoned industrial in Olathe and only slightly more than 400 acres being utilized'.

"9.  On May 4, 1976, the City Commission voted (4-1) to return the application to the Planning Commission for further study of the following items:

"a.  The fact that Indian Creek Reservoir, which is no longer planned, may allow plan modifications;

"b.  the type of acceptable buffer zones needs to be defined;

"c.  the opinions of opposing parties, including Chuck Wise, should be considered and discussed.

"10.  On May 24, 1976, the Olathe Planning Commission again denied said application, assigning as its reasons this time, the following:

"a.  'The change in reservoir plans does not seem so significant that the section study does not remain the best guide available';

"b.  'the speculative nature of this proposal';

"c.  'the proposal deviates significantly from the section study';

"d.  'that there are in excess of 2,000 acres in the city limits zoned industrial, over 1,000 of which are not yet developed, which means that there is an excess of industrial undeveloped land in Olathe (6-0).'

"11.  On June 15, 1976, the City Commission again heard the matter and voted to deny same, the vote being 3-2.

"12.  The Section Studies 2, 3, 4 (Exhibits 9, 10, 11) are detailed and when all three studies are viewed as a whole, it becomes evident that they are closely interrelated. The studies show a layer of industrial uses abutting I-35 and this recommended use is shown in light blue. The industrial use is surrounded with a transitional use of medium density residential and this is shown in orange. The medium density residential acts as a protective buffer for the low density residential areas which are shown in yellow to the south and east. Section Study 2 proscribes an industrial land use from a point 400 feet south of the intersection on the west side of Blackbob north to I-35. Immediately south of this area, a layer of medium density residential is recommended as a buffer to protect the residential areas which have in fact commenced in the area south of 119th and Blackbob on the west side of Blackbob. Section Study 4 recommends a layer of light industrial on the east side of Blackbob north of the intersection and this property has already been zoned light industrial. (This area has a 35' buffer zone plus a medium density residential area which acts as a buffer for the low density residential land use to the east.) Section Study 3 shows a 16 acre rectangular tract of light industrial in the northwest corner of the real property in question. The length of this industrial tract matches the industrial use on the north side of 119th. The depth of the

rectangular tract matches the depth of the industrial tract on the west side of Blackbob south of the intersection. This rectangular piece of ground is then surrounded by a transitional use of medium density residential which acts as a protective buffer for the low density residential uses to the south.

"13. The experts generally agreed that land use planning was necessary for developing cities in order to maintain orderly growth and development. The witnesses agreed that it was necessary to separate conflicting land uses such as industrial and low density residential and that this separation was achieved by a planning tool called a 'buffer zone' or a 'transitional use'. If conflicting uses occur in close proximity without adequate buffering or a transitional use to separate the two uses, then blight and deterioration will occur. The original plan of plaintiff did not provide such a buffer; a subsequent plan at the suggestion of the City provided for a 60' buffer zone (Exhibit 23[b]). A good part of the dispute herein lies within the concept of the adequacy of this 60' buffer.

"14. The Court finds that by Section Study 3, dated June, 1973, the City permitted 16 acres of 'light industrial' usage on plaintiff's property. Defendants contend a change from 16 acres to 43.5 acres is a radical departure; plaintiff argues it is not and merely constitutes a reasonable enlargement of the acreage provided for such purpose.

"15. That an irregular but general corridor exists approximately one mile on either side of interstate highway I-35 through Johnson County, as area for industrial development.

"16. From testimony and the Court's inspection, the land which plaintiff seeks to have zoned 'light industrial' lies within this irregular corridor.

"17. The plaintiff contends its proposed industrial use of said property as an industrial park is more desirable and compatible with adjacent residential development, as compared to free-standing industrial development which exists on the south side of 119th between Blackbob and highway I-35.

"18. The preponderance of the evidence suggests that the minimum acreage needed for development of an industrial park is between 40 and 50 acres.

"19. The Court further finds that the defendants' Comprehensive Plan of 1969 and the Section Studies of 1973, by reason of the abandonment of the Indian Creek Reservoir project, are no longer binding on the defendants as appropriate guidelines for the development of the City of Olathe, Kansas.

"The Court, in arriving at the findings hereinbefore expressed, considered the evidence from witnesses, exhibits and statutes utilized during the trial which, in highly abbreviated form, support the following:

"1. The obligation by statute is on the City in formulating its Comprehensive Plan to consider studies of past and present conditions, trends, population, building intensity, public facilities, transportation, economic conditions and natural resources. Such a plan was adopted by defendants in 1969. It was in substance updated by Section Studies in 1972 and 1973. At these times a project of the U.S. Corps of Engineers to be known as Indian Lake, in close proximity to plaintiff's property, was a viable project and certainly deserved the defendant's consideration in their position of inflexibility on use of the land in question. In 1975, however, the Lake project fell in disfavor and its development was abandoned by the Corps. This substantially affects the Court's reasoning in the instant case as the City's position was based on its original Comprehensive Plan of 1969

and subsequent Section Studies of 1972-73. Evidence further considered by the Court was as follows:

"a) The City granted a 16 acre tract, at a time before the Lake project was abandoned;

"b) Light industrial planning was approved in degree for each quadrant of the intersection of Blackbob Road and 119th Street, including the 16 acres on the southeast corner owned by plaintiff herein.

"c) The plaintiff's second proposal contained a 60' buffer zone on the south of its property. A buffer zone was suggested by the City at preliminary hearings. A buffer zone of some 30' to 35' on property on the northeast corner of the intersection seemed to satisfy the City on that particular Section Study. (This directly north of instant property.)

"d) The proposed plans of plaintiff provided for 40 acres more or less in the northwest corner of the property for light industrial, this buffered on the east by a series of multi-unit apartment complexes and buffered further east of that by single dwelling houses. To the south of the light industry area was planned a 60' berm or grassy area.

"e) The final vote of the commission denying plaintiff's plan was a 3-2 decision.

"f) Considerable evidence was offered relative to the possibility of increased traffic usage of both 119th and Blackbob, presently designated as arterial roads. This factor must remain quite conjectural, but was one that should have received consideration by the commission.

"g) A corridor of property was planned, in general, one mile in width on each side of I-35, all through Johnson County, for future industrial development. Plaintiff's property is within, but close to this limitation. The one mile unit is not a hard fast measurement, but enjoys flexibility, i.e., more congested areas of I-35 should be expanded while less congested areas should be more narrow. The instant property is in close proximity to Port of Entry # 8 which enjoys substantial traffic and accommodating services.

"h) From the Court's inspection of the area, it contains residences of a relatively sparse nature, some business or industry, vacant ground, pasture and farmland. There are many curb cuts on both streets to serve individual usage of the various properties, business, farm, or residential.

"i) Plaintiff's witness, George Butler, Jr., who qualified as a land-planning expert, felt there was an acute need and demand along the I-35 corridor. The lay of the ground was ideally suited for plaintiff's plans; he recognized Indian Lake as a nonviable project and plaintiff's plans were well adapted, and he felt 40 to 50 acres were necessary for industrial park. He felt such a park would reduce traffic problems, curb cuts, would have controlled access, controlled landscaping and would be compatible with residential buildings as indicated in Exhibit 23-B-I. He felt it unreasonable for the City to deny plaintiff's plan.

"j) Witness Jerry Ogburn, called by plaintiff, qualified as a landplanning expert, and testified in substance as did Mr. Butler. He further felt the I-35 corridor in Johnson County to be the most desirable for industrial park in seven counties. It would make for prosperity and increased tax base and plaintiff's plan would be a definite asset to the City of Olathe, necessitating 40 to 50 acres, but preferring 100 acres, to develop an industrial park. He did not feel the 'strip zoning' 400 feet on the south side of 119th Street from I-35 to Blackbob was good

planning (west of instant property). It encourages numerous curb cuts, traffic hazards and he believes Olathe should develop light industrial acres, at least 130 acres a year, on the corridor. He believes plaintiff's plan is reasonable, workable and violates none of the provisions of K.S.A. 12-704 with which he is acquainted.

"k) Witness Bruce Craig, called by defendant, is a City Commissioner and past Mayor of Olathe. He was present at prior City Commission hearings. He had considered the land use, did not place too much emphasis on contiguous land-owners' objections, believed the comprehensive plan guidelines. He felt there were no health, morals, order, convenience, prosperity or general welfare objections to plaintiff's plan. He followed planning board's recommendation and acknowledged 'speculative nature of project' was not a valid objection to the project.

"l) Witness Hugh Speer, called by defendants, was a contiguous landowner, objecting to the plan on the basis that it was primarily for aesthetic reasons and because of close proximity to Johnson County Community College and proposed park (one to one and a half miles east of plaintiff's project).

"m) Richard Kellenberg, called by defendants, qualified as a land-planning expert, and believes low density residential development for the area is most desirable, considers plaintiff's plan a major deviation. He felt that Olathe is over-zoned for light industrial, but he authored Section Studies 2, 3, 4 and one reason for providing 'light industry' in the area was 'demand', strip zoning (south side of 119th), not necessarily bad planning and he acknowledged the 'speculative nature' was one reason for the denial. He acknowledged there had been an agreement with area property owners that there would be no more light industrial zoning in the area after the Section Studies. He believes politics may enter zoning matters. He denied he had told plaintiff at one time that he could acquire approval from the commission for 50 acres 'light industry' on plaintiff's property.

"n) John Shamberg, called as a rebuttal witness for plaintiff, recalled a previous conversation with the prior witness, receiving assurances that he could, prior to being employed by the City, obtain approval for 50 acres 'light industrial' on the tract in question.

"2. The statutes governing the issues herein are K.S.A. 12-701, et seq. and with particular reference to K.S.A. 12-704, setting forth 'Powers and Duties of Commissions; Comprehensive Plans and Review'.

"3. This Court is limited in determining from the facts presented: 1) whether or not the action taken in denying the plaintiff's application was unlawful or if the procedures followed were in conformity with the law; and 2) the reasonableness of the action taken. There is no question as to number one above; there was no evidence of impropriety in the proceedings followed by the Planning Board or City Commission. The major concern of the Court is whether the action taken was reasonable, unreasonable, arbitrary or capricious.

"This Court cannot substitute its judgment for that of the City Commissioners who are elected or appointed to make and consider, to review, reconsider, amend, extend or add to a city plan. This Court should not declare the City's actions unreasonable unless it is clearly compelled to do so by the evidence.

"The Court is cognizant, as the defendants point out in their memoranda, that while there is some evidence favorable and some unfavorable to each side, the Court should not insert its judgment to weigh one side or the other of the debate.

Defendants contend that if a debate exists, then the Court should rule in favor of the City.

"The Court cannot accept this contention because what case ever comes before a Court that is not full of controversy or debate. The Court accepts the proposition that if certain factual contentions are supported by divergence of testimony, it should not engage in that debate, but where the obligation is to search the record and from that record determine whether the City was reasonable or unreasonable, this then becomes the judicial function. If a finding is made of unreasonable conduct of the City, this must be arrived at by clear compelling evidence.

"This Court is of the opinion and so finds that the City was unreasonable in that it failed to consider sufficiently the factors that should be considered or at least it failed to consider many of the criteria set out in K.S.A. 12-704.

"The record discloses the City's reasons for denial, either at Planning Commission level or City Commission level, are limited to:

"a) Speculative nature of plaintiff's plan (this is not supported by the statute);

"b) Plaintiff's plan is a substantial deviation from the Comprehensive Plan (change from 16 to 43.5 acres);

"c) Currently too much industrial area already in the City of Olathe, Kansas (there was divergent testimony; this should not be the determining factor);

"d) Indian Creek Reservoir would necessitate strict planning compliance (the Corps of Engineers abandoned this project in 1975, before the City's denial of plaintiff's plan);

"e) A buffer zone needed to be set out from original plan. (Plaintiff's second plan provided a 60' buffer zone; query, is 60' sufficient?)

"This, in essence, was the basis for the denial. There is no direct showing that the factors set out in K.S.A. 12-704 for the formulating of the original Comprehensive Development Plan were met. However, it is obvious from a review of plaintiff's Exhibit 6 (the original plan of 1969) that considerable time and effort went into the compliance with the statute to develop a most viable plan. It is significant to note that contained within Exhibit 6 is the statement, 'If possible, industrial use areas designated on the plan should be developed as an industrial park type of complex.'

"The indefinite one mile corridor along I-35 highway is not being violated.

"The Section Studies permit considerable 'free standing' light industrial uses in the area.

"No evidence was received that the City gave consideration to the specifics of K.S.A. 12-704 for amending or modifying the plan. There was no evidence by the City (Mr. Craig) that the City considered the *health* ramifications of the plan, the *morals* involved with the plan, the *orderliness* of the plan, nor of the *general convenience, prosperity* or *general welfare* to the City of the plan, as set out by statute.

"For all of these reasons, and the findings heretofore set out, it is the opinion of this Court that considering the nature of the planned development by the plaintiff, the City did not adequately study 1) both the Comprehensive Development Plan and subsequent Section Studies, or subsequent changes of circumstances (abandonment of Indian Lake); 2) the overall allowances of light industry development in the immediate area; 3) heavier requirements of buffering than on property to the north; 4) the granting of limited (16 acres) acreage to plaintiff

contra to 43.5 acres which would necessitate free standing development; 5) frequent curb cuts, traffic problems, etc., no consideration of tax bases or recognition of the advantages of the I-35 corridor, etc. in the Johnson County area were shown as receiving consideration.

"If all factors had been considered and studied as was presented to the Court in a three day trial, the outcome may or may not have been the same. The Court finds, however, that the City's actions were unreasonable and that the area should be zoned to accommodate plaintiff in its projections."

The city, in support of its claim that its action was reasonable, and that the trial court erred in its finding of unreasonableness, points to five specific areas where the court made findings which the city contends were either contrary to the evidence or were beyond the trial court's limited scope of review because the evidence showed the issue was "fairly debatable."

The city contends that its action was reasonable because the bank's plan deviates from the Section Study of 1973 in two respects: it calls for three times as much land to be zoned industrial as is provided in the Section Study, and it provides no transitional use to the south. Before we turn to these questions, however, we turn first to the Section Studies to determine whether they are still valid. The trial court determined that the Section Studies were no longer effective and binding on the city because they had not been updated since the abandonment of the Indian Creek Reservoir project, and for various other reasons which we will presently discuss. There was no evidence to show that the planning commission had annually reviewed the plan "for the purpose of determining if any portion of the plan has become obsolete," or that the commission made annual reports to the governing body, all as directed in K.S.A. 12-704. Unquestionably, the proposed large impoundment of water and surrounding park areas was a primary factor in the early planning of the area here involved. When the plans to develop the lake and park were abandoned, no changes were made by the planning commission. The lake still remains as a prominent feature of Section Studies 2 and 3. The record does not indicate that the Studies were ever reviewed except when the bank's petition to rezone this one tract was referred back to the planning commission by the city. This does not conform to the statutory mandate.

In addition to the abandonment of the lake project, numerous other factors could affect the Section Studies. These include increased traffic along both 119th Street and Blackbob Road; the

building of a cloverleaf interchange at the intersection of 119th Street and Switzer bypass, a short distance to the east of plaintiff's property; and the development of the I-35 corridor, and of much light industrial zoning and construction in the immediate area. The principal, if not the only, evidence to support the city's claim that the Studies are still valid is the testimony of the man who prepared them. We conclude that the trial court's finding that the Studies are no longer effective and binding has abundant support in the record.

Even if the Studies were still controlling, the deviation and the buffer zone were carefully considered by the trial judge who viewed the area. His conclusions are amply supported. The undisputed evidence is that the city's comprehensive plan urges the development of industrial parks rather than "freestanding" industrial uses for many good and valid reasons, and that 40 acres or more is the minimum acreage needed for the development of an industrial park. The buffer zone proposed is shown to be twice the width of other buffer zones required in the same area. We conclude that the court's finding of unreasonableness is not contrary to the evidence, but is abundantly supported by the record.

Next, the city contends that the trial court failed to consider evidence that the city has an excess of undeveloped industrially zoned land. There is no evidence, however, that *any* of that undeveloped industrial land lies along the I-35 corridor or in the vicinity of the land under consideration. To the contrary, there is evidence that industrial zoning is needed in the corridor and in the immediate area. The Section Studies recommended *some* industrial zoning of the bank's land because of the demand for light industrial sites there. The fact that there is undeveloped industrially zoned land somewhere in the city should not be a controlling consideration, as the trial court correctly noted. We find no indication that the court failed to give this factor due consideration.

The city contends that the trial court erred in failing to find that the city considered the orderliness of the plan. One of the city's witnesses, Commissioner Craig, testified that the rezoning request was not refused because of any of the factors enumerated in K.S.A. 12-704, including "order." There was no direct evidence that the city considered the listed factors, except that Craig did

say that one of the grounds for denying the request could be "order" insofar as it consisted of failure to provide buffering or transitional areas.

The trial court was well aware of its review limitations (See K.S.A. 12-712) as enunciated in *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130 (1978) and cases therein cited. In the memorandum decision quoted above, the trial court said:

"[W]here the obligation is to search the record and from that record determine whether the City was reasonable or unreasonable, this then becomes the judicial function."

We hold that the trial court properly exercised this function and employed the correct standards. It did not give undue consideration to the city's failure to consider any one of the important factors. (See *Golden,* at 597-598.) This includes the factor of highest and best use, which the city also contends was given undue significance by the trial court. We find no evidence to support this claim.

Upon a thorough review of the record we hold that the trial court's findings are amply supported.

The judgment is affirmed.

FROMME, J., dissenting. This court again has approved the acts of a district court in finally administering the zoning laws of this state. There can be no doubt under the court's decision that final authority on zoning applications rests with the district courts. The statutory scope of review set forth in K.S.A. 12-712 has been ignored. This court now shifts the burden of proof to the city. It must now establish the zoning action was reasonable as viewed by the courts.

Again I wish to register my disagreement with the action of the majority for the reasons set forth in the dissent in *Golden v. City of Overland Park,* 224 Kan. 591, 601, 584 P.2d 130 (1978).