JACOBS, VISCONSI & JACOBS, CO.; Richard A. Armstrong; and Betty J. Grisham, Plaintiffs–Appellants,

v.

CITY OF LAWRENCE, KANSAS; Robert J. Schumm; Michael Amyx; Dennis D. Constance; Sandra K. Praeger; Thomas M. Rundle; Lawrence–Douglas County Metropolitan Planning Commission; and Does 1 through 100, Defendants–Appellees.

No. 89–3082.

United States Court of Appeals, Tenth Circuit.

March 5, 1991.

---

1112

Robert H. Freilich of Freilich, Leitner, Carlisle & Shortlidge, Kansas City, Mo. (Neil R. Shortlidge and Barbara Brink of Freilich, Leitner, Carlisle & Shortlidge, Kansas City, Mo., and John A. Emerson of Barber, Emerson, Springer, Zinn & Murray, Lawrence, Kan., on the briefs), for plaintiffs-appellants.

Barbara Baran of Ross & Hardies, Chicago, Ill., and Gerald L. Cooley of Allen & Cooley, Lawrence, Kan. (Roger Brown of Allen & Cooley, Lawrence, Kan., Richard F. Babcock and Daniel P. Hogan of Ross & Hardies, Chicago, Ill., with them on the brief), for defendants-appellees.

Before McKAY, ANDERSON, and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

Appellants, landowners and a developer whose request to rezone a parcel of land was denied by the Lawrence City Commission, appeal the district court's dismissal of

their complaint alleging civil rights and antitrust violations for failure to state a cause of action for which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). When reviewing the summary dismissal of a complaint, we view the facts in the light most favorable to the plaintiff. *Lessman v. McCormick*, 591 F.2d 605, 607 (10th Cir. 1979).

## I.

Appellant Jacobs, Visconsi & Jacobs Company holds an option to purchase a tract of land owned by appellants Armstrong and Grisham. The land is located on the southern edge of Lawrence, Kansas. Appellants sought to rezone the property from single-family residential to general commercial for the purpose of developing a suburban shopping mall. They first filed an application for rezoning in February 1979. The city planning commission recommended denial of the rezoning proposal, which was affirmed by the city commission on March 17, 1981.

After a failed attempt by JVJ at a joint venture to develop a downtown retail shopping center, appellants again filed a rezoning application for the Armstrong and Grisham property on July 13, 1987. In the period between the two applications, the city planning commission adopted a comprehensive downtown plan. The downtown plan purportedly amended Plan '95, the city's comprehensive development plan enacted pursuant to Kan.Stat.Ann. § 12–704 (1982). The stated policy of the downtown and development plans is to support the central business district of Lawrence as the region's only retail center. To that end, the downtown plan favors reduction of competition for downtown business interests. In furtherance of the plan, the city commission appointed a downtown improvement committee to provide assistance and advice on downtown development issues.

On August 8, 1987, the downtown improvement committee concluded that the JVJ proposal, along with two other proposals to develop suburban retail malls, could threaten the downtown's role as the retail core of the city. It recommended that the city pursue a large-scale development in the downtown area. The downtown improvement committee also approved a statement opposing appellants' rezoning application. The statement was presented at a public hearing on appellants' rezoning request.

The city's planning commission also issued a report opposing the three applications for rezoning based in part on their potential negative effect on the downtown retail area. After a public hearing on appellants' application, which spanned over three separate meetings, the planning commission voted unanimously to recommend denial of the application to the city commission. Meanwhile, the downtown improvement committee endorsed a plan to rejuvenate the downtown area and outlined a financing scheme to achieve its objectives.

After the planning commission issued its recommendation, JVJ filed with the city commission a request for the disqualification of one or more of the commission's members from the consideration of its rezoning application for reasons of bias or prejudice. Commissioner Schumm is the proprietor of four businesses located in the downtown area. Commissioner Amyx owns real estate in downtown Lawrence and is also the proprietor of a business located there. In addition, Commissioner Constance was an active member of the downtown improvement committee during its analysis of JVJ's rezoning application. JVJ also stated its concern that many of the commission members had prejudged the merits of its rezoning request.

On April 12, 1988, the city commission adopted the planning commission's findings of fact. It then voted unanimously to accept the planning commission's recommendation to deny appellants' rezoning request. None of the commissioners disqualified themselves from considering the application.

On May 10, 1988, appellants filed a five-count complaint in the district court against the City of Lawrence, its city commissioners and the city-county planning commission. The complaint seeks both monetary

and injunctive relief. Four counts allege deprivation of constitutional rights in violation of 42 U.S.C. § 1983 (1988). The complaint alleges that appellants were denied procedural due process, equal protection, and substantive due process. Appellants also allege that they were deprived of property without just compensation. The final count alleges a violation of federal antitrust law. After appellees filed a motion to dismiss the complaint, appellants voluntarily withdrew the count that alleged a taking without just compensation. *See* Fed.R. Civ.P. 41(a)(2).

The district court dismissed the remaining four counts pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action for which relief could be granted. *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 715 F.Supp. 1000 (D.Kan.1989). The district court dismissed appellants' procedural and substantive due process claims after concluding that appellants' rezoning application did not present a property interest sufficient to trigger due process protection. The court next found appellants' equal protection claim deficient. It concluded that appellants did not allege two identifiable groups that were treated differently. Even if appellants were to allege unequal treatment, the district court reasoned, the denial of appellants' rezoning application was rationally related to a legitimate purpose. Finally, the district court found that appellees' actions were entitled to state action immunity for the alleged antitrust violation.

■ Appellants appeal the judgment of the district court on each of the four counts. We review *de novo* a district court's dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief could be granted. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). We will uphold a dismissal only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief. *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Pike v. Mission,* 731 F.2d 655, 658 (10th Cir.1984).

## II.

By its terms, a plaintiff states a cause of action under section 1983 when the plaintiff alleges both the deprivation of a federal right and that the defendant acted under color of state law.[1] *Lessman,* 591 F.2d at 609. The parties do not dispute that appellees' actions were taken under color of state law. The issue before us, therefore, is whether appellees' actions deprived appellants of a federal right. We address, in turn, appellants' claims relating to procedural due process, equal protection and substantive due process.

### A. Procedural Due Process

Appellants initially argue that they were denied an opportunity to bring their rezoning application before a fair and impartial tribunal. They emphasize the personal interest of two of the council members in the downtown area and the involvement of another on the downtown improvement committee. Appellants also allege that many of the commissioners had prejudged appellants' rezoning application. They contend that the city commissioners' consideration of the application was therefore tainted with bias and prejudice.

■ Procedural due process guarantees apply only to those liberty and property interests encompassed by the fourteenth amendment. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To sustain their cause of action under section 1983, then, appellants must first allege a property interest sufficient to warrant due process protec-

---

1. Section 1983 of the Civil Rights Act of 1871 provides, in relevant part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

 42 U.S.C. § 1983 (1988).

tion. *Curtis Ambulance, Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1375 (10th Cir.1987). A property interest protected by the due process clause results from a legitimate claim of entitlement created and defined "by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. When analyzing whether a plaintiff presents a legitimate claim of entitlement, we focus on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome.[2] *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978). Appellants must therefore demonstrate that there is a set of conditions the fulfillment of which would give rise to a legitimate expectation to the rezoning of their property. Otherwise, the city's decisionmaking lacks sufficient substantive limitations to invoke due process guarantees. *See Walker v. Kansas City*, 911 F.2d 80, 94 (8th Cir.); *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989); *RRI Realty Corp. v. Southampton*, 870 F.2d 911 (2d Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985).

■ We look to Kansas statutes and case law to determine the legitimacy of appellants' claim. *See Gunkel v. Emporia*, 835 F.2d 1302, 1305 (10th Cir.1987). The Kansas City Planning and Subdivision Regulations require that a zoning ordinance be reasonable and prescribe procedures by which a citizen may challenge a particular ordinance. *See* Kan.Stat.Ann. §§ 12–712, 12–715 (1982). The reasonableness standard was extended to a city's re-

fusal to rezone property by the Kansas Supreme Court in *Golden v. Overland Park*, 224 Kan. 591, 584 P.2d 130 (1978), and its progeny. *See Landau v. City Council of Overland Park*, 244 Kan. 257, 767 P.2d 1290 (1989); *K–S Center Co. v. Kansas City*, 238 Kan. 482, 712 P.2d 1186 (1986); *Taco Bell v. Mission*, 234 Kan. 879, 678 P.2d 133 (1984); *Security Nat'l Bank v. Olathe*, 225 Kan. 220, 589 P.2d 589 (1979). In *Golden,* the state court set forth six factors that it felt "would be well for a zoning body to bear in mind when hearing requests for change."[3] *Id.* 584 P.2d at 136. Appellants argue that, in light of the Kansas court's enumeration of these factors, substantive restrictions have been imposed on the government's decisionmaking power sufficient to confer due process rights upon the applicant.

■ We agree with the district court's conclusion that the state law's requirement that zoning decisions be reasonable, even as modified by the factors enunciated in *Golden*, is insufficient to confer upon the applicant a legitimate claim of entitlement. As the Kansas Supreme Court later acknowledged, the *Golden* factors are clearly meant only as suggestions. *Landau*, 767 P.2d at 1294. Zoning bodies generally are granted wide discretion in their zoning decisions, *see Combined Inv. Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 605 P.2d 533, 543 (1980), and "[r]easonableness remains the standard of review." *Golden*, 584 P.2d at 137; *see also Security Nat'l Bank*, 589 P.2d 589 (district court did not rely unduly on *Golden* factors when overturning city's refusal to grant rezoning, but instead correctly based its decision on

**2.** In *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), for example, financial aid recipients whose benefits had been terminated without a hearing were found to possess a legitimate claim of entitlement worthy of due process protection. Even though the recipients had not demonstrated they were within the terms of statutory eligibility, the Court reasoned that the existence of concrete rules to establish entitlement was sufficient to confer upon the applicants a right to a hearing.

**3.** Those factors are:
(1) The character of the neighborhood;
(2) the zoning and uses of properties nearby;

(3) the suitability of the subject property for the uses to which it has been restricted;
(4) the extent to which removal of the restrictions will detrimentally affect nearby property;
(5) the length of time the subject property has remained vacant as zoned; and
(6) the relative gain to the public health, safety, and welfare by the destruction of the value of plaintiff's property as compared to the hardship imposed upon the individual landowner.

*Golden,* 584 P.2d at 136.

ultimate issue of reasonableness). Kansas law does not therefore arm appellants with sufficient "rules or mutually explicit understandings that support [their] claim of entitlement" to the rezoning of their property. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

■ Appellants also correctly point out that the Kansas courts characterize the rezoning process as quasi-judicial. *See Golden,* 584 P.2d at 135. They argue that this characterization binds this court for the purpose of determining whether applicants possess a property interest. Once the process is recognized as quasi-judicial, appellants argue, procedural due process guarantees must attach to the proceeding.

Appellants' argument may have merit if appellees were attempting to escape notice and hearing requirements by asserting application of the "legislative act" doctrine to an interest clearly protected by the Due Process Clause. *See Harris v. Riverside,* 904 F.2d 497, 502 (9th Cir.1990). The classification of the rezoning application process as quasi-judicial by the Kansas Supreme Court, however, does not further appellants' expectation of a property interest or otherwise place substantive limitations on official discretion. *Cf. Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980) (that state law pre-

scribes certain procedures does not necessarily raise those procedures to federal constitutional dimension).

Although property interests are defined by state law, we believe that the classification by the state of the particular procedure due the applicant is insufficient, in itself, to bring that interest within the protection of the Due Process Clause.[4] *See Curtis Ambulance,* 811 F.2d at 1377 and n. 2. *See also Shelton v. College Station,* 780 F.2d 475, 482 (5th Cir.) (en banc), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986) (the quasi-judicial nature of zoning decisions does not by itself trigger a procedural due process inquiry or otherwise create a property right). The Supreme Court has recognized that the mere existence of an entitlement to a hearing under state law, without further substantive limitation, does not give rise to an independent substantive liberty interest protected by the fourteenth amendment. *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (procedural structure regulating the use of administrative segregation does not necessarily create a protected liberty interest). We believe that the principle cited in *Olim* and *Hewitt* applies equally as well to property interests. *See generally Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976).

4. Appellants' citation to *Littlefield v. Afton,* 785 F.2d 596, 602 (8th Cir.1986), to support its argument that the quasi-judicial character of the proceeding significantly and substantially restricts the discretion of the decisionmaker is misplaced. There, the court held that an applicant had a protected property interest in a building permit. It based its conclusion, however, on an ordinance that required issuance of a permit upon the applicant's compliance with certain conditions. It did not rest its holding on the quasi-judicial character of the application process.

We also note the following remarks of Justice Stevens:
The fact that codes regularly provide a procedure for granting individual exceptions or changes, the fact that such changes are granted in individual cases with great frequency, and the fact that the particular code in the record before us contemplates that changes consistent with the basic plan will be allowed,

all support my opinion that the opportunity to apply for an amendment is an aspect of property ownership protected by the Due Process Clause of the Fourteenth Amendment.
*City of Eastlake v. Forest City Enter., Inc.,* 426 U.S. 668, 682–83, 96 S.Ct. 2358, 2366, 49 L.Ed.2d 132 (1976) (Stevens & Brennan, JJ., dissenting).
This passage may demonstrate the belief of at least two Justices that the availability of a mechanism to change the zoning of property confers upon the landowner a property interest. Even there, however, Justice Stevens recognized that the decisionmaker under the ordinance before the Court was required to grant rezoning requests consistent with the common plan. No such requirement exists here. As we have already concluded, the city commission's action need only be reasonable. The application process does not therefore impose significant substantive restrictions on the commission's action. *See Parks v. Watson,* 716 F.2d 646, 656–57 (9th Cir.1983).

In *Olim,* prison regulations required a hearing before an impartial program committee prior to the transfer of a prisoner that involved a grievous loss to the inmate. The regulations required that the committee make a recommendation after the hearing to the administrator of the prison, who would then decide what action to take. The regulations contained no standards governing the administrator's exercise of discretion. The Court in *Olim* concluded that, because the state created no substantive limitations on the discretionary power of the administrator, the availability of a hearing to the prisoner did not provide a basis for invoking the protections of the Due Process Clause. *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747.

Similar to procedural protection of liberty interests, procedural protection of property has been recognized as a valid safeguard of "interests that a person has already acquired in specific benefits" and as a means "to protect those claims upon which people rely in their daily lives." *Roth,* 408 U.S. at 576, 577, 92 S.Ct. at 2708, 2709. If the decisionmaker is granted a broad range of discretion, the applicant is seeking neither an interest that he or she has already acquired nor a claim upon which he or she should rely, regardless of the characterization of the process involved.[5] "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim,* 461 U.S. at 250, 103 S.Ct. at 1748.

**B. Equal Protection**

■ The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend. XIV. A violation of equal protection occurs when the government treats someone differently than another who is similarly situated. *See Cleburne v. Cleburne Living Center, Inc.,*

473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Landmark Land Co. v. Buchanan,* 874 F.2d 717, 722 (10th Cir. 1989). Appellants claim that the commission's application of Plan '95, the city's comprehensive land use plan, treats those developers who seek to develop shopping malls at suburban locations differently than those who seek to develop property in the downtown area.

The district court dismissed appellants' equal protection claim after it concluded that appellants failed to allege the existence of two identifiable groups whom the city treated differently. It reasoned that developers are treated equally because they all are allowed to develop high density commercial uses in the downtown area and all are forbidden to develop such uses in the city's edge. It also concluded that, in any event, the alleged unequal treatment rests on a rational basis. 715 F.Supp. at 1006.

■ We believe that appellants' complaint sufficiently alleges facts demonstrating unequal treatment of two similarly situated persons. As alleged by appellants, the city is favorably disposed to those developers seeking to rezone property in the downtown area as a result of the city's comprehensive plan. It is only the location of the proposed development that creates a different result for a developer wishing to develop property on the outskirts of the city. That those developers with an interest in developing on the outskirts of the city could change characteristics to receive favorable treatment is of no consequence. At the time of the application process, the sole difference between the two developers is the location of their planned development. "A State cannot deflect an equal protection challenge by observing that in light of the statutory classification all those within the burdened class are similarly situated. The classification must reflect pre-existing differences; it cannot create

**5.** *Compare Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (possessory interest of appellants to household goods purchased on installment contract sufficient to invoke due process safeguards); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d

570 (1972) (school's *de facto* tenure policy, arising from rules and understandings officially promulgated and fostered, provided the respondent with a sufficient expectancy to confer upon him a right to a requested hearing).

new ones that are supported by only their own bootstraps." *Williams v. Vermont,* 472 U.S. 14, 27, 105 S.Ct. 2465, 2474, 86 L.Ed.2d 11 (1985). Nor should it be allowed to withstand scrutiny merely by observing that an individual may change characteristics to fit within the favored class.

By virtue of Plan '95, two similarly situated developers are treated differently based solely upon the location of the proposed development. We therefore believe that appellants sufficiently allege facts demonstrating unequal treatment based solely upon a statutory classification. Arguments relating to the differences between the two classes that are reflected in the statutory classification go to the issue of reasonableness. They do not address whether the classes are similarly situated. Otherwise, all reasonable classifications would necessarily distinguish between two groups that are, by their very nature, dissimilarly situated.

█ Appellants, however, still must bear the burden of demonstrating the unconstitutionality of the challenged classification. *Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). Because the classification is not based on a "suspect class" and does not involve a "fundamental right", it need only have a reasonable basis to withstand constitutional challenge.[6] *Id.*

█ We believe the district court correctly concluded that retaining the vitality of the downtown area was a legitimate interest of the city commission. Declining to rezone property in a manner that would threaten the vitality of the downtown retail area is rationally related to that purpose.

## C. Substantive Due Process

█ Appellants also raise here their argument before the district court that appel-

lees' denial of their rezoning request deprived them of substantive due process. In addition to a property interest in their rezoning application, appellants assert a substantive due process interest in making reasonable use of their property free from arbitrary and capricious restrictions imposed by the application of zoning laws.

Authority in this circuit is unclear on what interest is required to trigger substantive due process guarantees. *Compare Harris v. Blake,* 798 F.2d 419, 424 (10th Cir.1986), *cert. denied,* 479 U.S. 1033, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987) (in order to present a claim of denial of substantive due process, a plaintiff must allege a liberty or property interest to which due process guarantees can attach); *Brenna v. Southern Colorado State College,* 589 F.2d 475, 476 (10th Cir.1978) (same); *Weathers v. West Yuma County School Dist.,* 530 F.2d 1335, 1342 (10th Cir.1976) (same), *with Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986) ("Rights of substantive due process are founded not upon state provisions but upon deeply rooted notions of fundamental personal interests derived from the Constitution."). Even if we were to recognize such an interest here, however, we must agree with the district court that appellants do not state a cause of action for which relief could be granted.

█ Absent invidious discrimination, the presence of a suspect class, or infringement of a fundamental interest, courts have limited their review of quasi-legislative or quasi-judicial zoning decisions in the face of a substantive due process challenge to determining whether the decision was "arbitrary and capricious." *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926); *RRI Realty Corp. v. Southampton,* 870

---

6. Appellants ask this court to engage in what they assert to be an exacting rational basis standard set forth by the Supreme Court in *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). There, the Court analyzed a city's regulation of group homes for the mentally retarded. Although the Court in *Cleburne* declined to recognize the mentally retarded as a suspect class, it admon-

ished the city that a desire to harm a politically unpopular group was not a legitimate state interest. *Id.* at 446–47, 105 S.Ct. at 3257–58. Even if we were to read *Cleburne* to require that laws discriminating against historically unpopular groups meet an exacting rational basis standard, however, we do not believe the class in which appellants assert they are a member merits such scrutiny.

F.2d 911, 914 n. 1 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Burrell v. Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987); *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1034 (3d Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987); *Shelton*, 780 F.2d at 477.[7] We are convinced that appellants did not allege facts sufficient to demonstrate that the commission's refusal to rezone appellants' property violated that standard. The report issued by the downtown improvement committee advised the city commission that JVJ's proposed suburban shopping mall would defeat the goals the city enumerated in Plan '95. Its action therefore furthered the legitimate purpose of protecting the vitality of the downtown business district.

### III.

Appellants finally allege that the commission engaged in anti-competitive activity in violation of the Sherman Act. *See* 15 U.S.C. §§ 1, 2 (1988). Appellants challenge the district court's conclusion that appellees' were immune from suit under the state action doctrine. They argue that the city's actions were not a reasonably foreseen consequence of their zoning authority. In addition, appellants contend that the financial interest in or personal preference for downtown development of the commissioners destroys any immunity granted to actions taken pursuant to state authority.

 Federal antitrust laws do not apply to anti-competitive acts that derive their authority from the state in the exercise of its sovereign powers. *Parker v.*

*Brown*, 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). Municipalities are not immune from antitrust liability, however, merely because they are a subdivision of the state. Their actions are exempt only if pursuant to a "clearly articulated and affirmatively expressed" state policy to "displace competition with regulation or monopoly service." *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (plurality opinion). "A state policy is considered clearly articulated and affirmatively expressed if the statutory provision empowering the municipality's action plainly shows that 'the legislature contemplated the kind of action complained of.' " *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 44, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985) (quoting *Lafayette*, 435 U.S. at 415, 98 S.Ct. at 1138); *see also Community Communications Co. v. City of Boulder*, 455 U.S. 40, 50–51, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982). We therefore analyze the applicability of the state action immunity exception to a municipal action in two steps: First, the state legislature must have authorized the action under challenge. Second, the legislature must have intended to displace competition with regulation. *Oberndorf v. City and County of Denver*, 900 F.2d 1434, 1438 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990) (citing Areeda, *Antitrust Law* ¶ 212.3a at 53 (1982 Supp.)). Appellees point to the Kansas Urban Renewal Act,[8] Kansas Redevelopment of Central Business District Areas Act,[9] and Kansas

---

7. The courts are not uniform in their application of the arbitrary and capricious standard in zoning ordinance cases. *RRI Realty*, 870 F.2d at 914 n. 1. If the application process is determined to be quasi-judicial, courts require that the articulated basis for the decision have a rational relationship to a legitimate state interest. *See, e.g., Shelton*, 780 F.2d at 489 (Burn, Politz, Johnson, Williams, JJ., and Tate, C.J., dissenting). If the process is characterized as quasi-legislative, however, the court need only find a rational reason upon which the decision could have been based. *See, e.g., Spence*, 873 F.2d at 261; *RRI Realty*, 870 F.2d at 914. We need not determine here which standard should apply to the City of Lawrence rezoning process

for the purpose of analyzing appellants' substantive due process claim. Nor need we determine whether federal courts should give deference to the designation of a procedure as quasi-judicial or quasi-legislative by a state court in the face of a constitutional challenge. Under either standard, appellants have established neither facts nor argument upon which relief could be granted.

8. Kan.Stat.Ann. §§ 17–4742 through –4762 (1988).

9. Kan.Stat.Ann. §§ 12–1770 through –1779 (1989 Supp.).

zoning and planning provisions,[10] and argue that these statutes authorized the commission's action.

Urban renewal statutes have routinely been held to confer state action immunity on municipalities. *See Scott v. City of Sioux City,* 736 F.2d 1207 (8th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *Miracle Mile Assoc. v. City of Rochester,* 1979–2 Trade Cas. ¶ 62,735 (W.D.N.Y.1979), *aff'd,* 617 F.2d 18 (2d Cir.1980). The Kansas Urban Renewal Act is no exception. *See Russell v. Kansas City,* 690 F.Supp. 947 (D.Kan.1988). Appellants contend, however, that appellees cannot find shelter under the Kansas Urban Renewal Act because appellees were not acting pursuant to that law when they denied appellants' rezoning request.

We nevertheless believe that section 12–704 of the Kansas City Planning and Subdivision Regulations,[11] in light of the state policies set forth in the Kansas Urban Renewal Act and the Kansas Redevelopment of Central Business District Areas Act, provides state authorization sufficient to trigger the first prong of the state action immunity doctrine. Here, the General Assembly of Kansas has delegated to the commission the power to plan for and zone the location of buildings and the use of land for commercial purposes in the city and the surrounding area. The Kansas General Assembly has also delegated to the commission the authority to pass on the rezoning of the property upon the owner's request. It has placed on the commission only the limitation that the response to a rezoning request be reasonable.

Moreover, the city council's denial of appellants' rezoning request, in our opinion, furthered an affirmatively expressed state policy to displace competition among land-owners and users with local regulation by zoning and planning. Admittedly, section 12–704 does not specifically authorize the denial of a rezoning request if the downtown business district would be threatened by the proposed development. Nevertheless, such a result is a sufficiently foreseeable consequence of the provision relied upon by the city commission to cloak its members with state action immunity. *See Sterling Beef Co. v. Fort Morgan,* 810 F.2d 961, 964 (10th Cir.1987). "[A]n adequate state mandate for anti-competitive activities of cities and other subordinate governmental units exists when it is found 'from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.'" *Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (quoting *Lafayette v. Louisiana Power & Light Co.,* 532 F.2d 431, 434 (5th Cir.1976)). It generally is recognized that the power to zone and rezone necessarily has foreseeable anti-competitive effects. *See Boone v. Redevelopment Agency of San Jose,* 841 F.2d 886, 890 (9th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); *La Salle Nat'l Bank v. Du Page,* 777 F.2d 377, 383 (7th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986).

In addition, the Kansas legislature has specifically authorized the city's use of its zoning powers to aid urban renewal. Kan. Stat.Ann. §§ 17–4744, –4748(h). Though the city commission did not act under the authority of this legislation, it is nevertheless clear that the state authorized the commission to use its zoning powers to sustain the vitality of the city center. We believe this mandate, along with the gener-

---

**10.** Kan.Stat.Ann. §§ 12–701 through –736 (1982).

**11.** Section 12–704 provides, in relevant part:

The planning commission is hereby authorized to make or cause to be made a comprehensive plan for the development of such city and any unincorporated territory lying outside of the city but within the county in which such city is located, which in the opinion of the commission forms the total community of which the city is a part....

Such plan or part thereof shall constitute the basis or guide for public action to insure a coordinated and harmonious development or redevelopment which will best promote the health, safety, morals, order, convenience, prosperity and general welfare as well as wise and efficient expenditure of public funds.

Kan.Stat.Ann. § 12–704 (1982).

al zoning provisions, sufficient to shield the city commission from an antitrust claim.[12]

 Appellants, however, point to the Court's opinion in *Parker* where it reserved judgment on situations where "the state or its municipality becom[es] a participant in a private agreement or combination by others for restraint of trade." *Parker*, 317 U.S. at 351–52, 63 S.Ct. at 314. Appellants contend that such a conspiracy exists here.

We believe that appellants' allegations of self-dealing by the commissioners are insufficient, in the situation presented here, to take the commission's action outside the state action immunity doctrine. At the outset, we note that appellants do not allege that the city commissioners engaged in illegal or fraudulent actions. *Compare Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 746 (8th Cir. 1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983) (circumstantial evidence of illegal or fraudulent actions deprived defendants of state action immunity) *with Scott*, 736 F.2d at 1215 (absent allegation of bribery or other illegal acts, council may invoke state action immunity doctrine upon a proper showing of authorization). Nor do appellants allege that the denial of JVJ's rezoning request was solely to further the private anti-competitive purposes of the commissioners. *Compare Omni Outdoor Adv., Inc. v. Columbia Outdoor Adv. Inc.*, 891 F.2d 1127 (4th Cir. 1989), *cert. granted*, — U.S. —, 110 S.Ct. 3211, 110 L.Ed.2d 659 (1990); *Fisichelli v. Town of Methuen*, 653 F.Supp. 1494 (D.Mass.1987) (state action immunity doctrine did not shield council that denied application for industrial revenue bond when commissioner conspired to prevent direct competition with his pharmacy and no other applicant who met all requirements had been previously denied). To the contrary, the commission's action was in compliance with Plan '95, the city's compre-

hensive plan enacted pursuant to section 12–704. Finally, appellants do not allege that the municipality participated in a private agreement or combination with another for restraint of trade. The complaint, taken in the light most favorable to appellants, alleges facts demonstrating only that a few commissioners have a financial interest in the downtown area. The complaint does not allege that the commission attempted to restrain competition within the area properly zoned for that purpose.

To allow such vague and unsubstantiated allegations as are presented here to strip municipalities of state action immunity would render the *Parker* doctrine meaningless. Appellants' objection to the application of Plan '95 to rezoning decisions should be remedied through the political process rather than in the federal courts.

## IV.

For the foregoing reasons, we AFFIRM the order of the district court dismissing appellants' complaint for failure to state a claim for which relief could be granted.

---

12. Because we find the city council's refusal of appellants' request to rezone the subject property shielded by the state action immunity doctrine, we do not address the district court's determination that the actions of the appellees are protected under the *Noerr–Pennington* doctrine. *See United Mine Workers v. Pennington*,

381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). We note that appellants do not allege a conspiracy between the city commission and a private citizen to whom *Parker* immunity does not apply.