ROLLINGS CONSTRUCTION, INC., an
Oklahoma corporation, Appellant,

v.

TULSA METROPOLITAN WATER
AUTHORITY, an Oklahoma
Public Trust, Appellee.

No. 65312.

Supreme Court of Oklahoma.

Oct. 13, 1987.

Rehearing Denied Dec. 1, 1987.

Benjamin P. Abney, Stephanie L. Jones, Chapel, Wilkinson, Riggs, Abney & Henson, Tulsa, for appellant.

R. James Unruh, Neal E. McNeill, City Atty., City of Tulsa, Tulsa, for appellee.

SUMMERS, Justice.

The low bidder for a public construction contract sought injunction and mandamus when the contracting authority accepted the second lowest bid. The trial court held that the issuance of a "Contractor's Prequalification Certificate" pursuant to city ordinance does not per se deprive the contracting authority of its discretion in awarding the bid to the "lowest responsible" bidder under the Public Competitive Bidding Act of 1974, 61 O.S.1981 § 101 et seq., and refused the relief requested.

We affirm.

There are no controverted facts. The City of Tulsa has adopted ordinances establishing procedures by which contractors wishing to do construction business with that City must prequalify as a condition for submitting a bid.[1] The contractor furnishes an abundance of information about itself. If the application is satisfactory an Advisory Board recommends the qualification of the applicant based on financial responsibility, nature and quality of equipment and personnel, performance record, other contract commitments, reputation for reliability and integrity, and other relevant factors. The City Board of Commissioners then acts upon the Advisory Board's recommendation. The Prequalification Certificate, if issued, expires at the end of each year, subject to renewal. A certificate may be revoked for express conditions, at a hearing held pursuant to notice given the contractor. All bids by non-Certificate holders shall be returned unopened.

Rollings Construction Inc. (plaintiff and appellant) was the holder of such a valid Prequalification Certificate at the time it bid on a contract advertised by the Tulsa

---

**1.** Title 5, Chapter 5–B, Sections 62, 63, 64 and 65, Tulsa Revised Ordinances.

Metropolitan Water Authority (defendant and appellee), a public trust. The job called for installation of water lines between Oologah Lake and Tulsa, referred to as Contract 5, Sections A and B, Oologah Water Supply Project.

When the Water Authority opened the bids Rollings' bid of $1,916,616.00 was low. The Authority, however, awarded the contract to the next lowest bidder, whose bid exceeded Rollings' by some $43,000.00. Rollings sued in district court to enjoin performance of the contract under 61 O.S. 1981 § 122 and for mandamus to compel the Water Authority to award it the contract.[2] When the district court denied relief Rollings brought this appeal.

Among the facts stipulated to before the trial court are these:

1. The Water Authority is a public trust established to provide water and sewerage to the City of Tulsa and its citizens.

2. The Water Authority and the City of Tulsa are separate entities.

3. At the time of the award of the contract Rollings had in existence a contract with the Water Authority, namely:

Oologah Contract 1, Sections A & B, work order issued May 9, 1984, completion date July 4, 1985, extended to July 12, 1985, contract not yet completed;

and another contract with the City of Tulsa, namely:

Southside Sewage Treatment Plant and Drying Beds, work order issued May 2, 1984, completion date December 1, 1984, proposed extensions pending to July 24, 1985, contract not yet completed.

In addition, Rollings had requested change orders asking for time, extensions and additional monies in the amount of $566,-183.48, which were then pending before the Water Authority, and were the subject of continuing discussions and negotiations.

4. The Water Authority determined that because of these ongoing contract disputes the bid of Rollings was not the lowest and best bid, and awarded the contract to the next low bidder.

The basic issue in this first impression case is whether Rollings by virtue of its Prequalification Certificate is entitled to the contract as a matter of law as the lowest responsible bidder.

Under § 103 of the Act "[A]ll public construction contracts shall be let and awarded to the lowest responsible bidder...." Among the stipulations of fact is one that Rollings is a responsible bidder. The Authority maintains it had discretion, however, to pick the "lowest and best bidder", taking into account the two Rollings contracts behind schedule and the large contested cost overruns. The trial court, in its decision, commented:

"Now, that certificate is renewable each year. And it's my feeling, from reading everything that I've got here and common sense, that six or eight months after that prequalification certificate has been issued, that the Board or the City can't ignore everything that they know or are aware of and rely solely on the prequalification certificate. I think that the Board would be remiss in their duties if they knew of something that would affect the ability of the contractor to perform the duties. I can't in any way see that a city board wouldn't have some discretion in arriving at what would be the lowest responsible bidder."

McQuillin in his treatise on Municipal Corporations, 3rd Edition, Revised, Volume 10, Section 29.29, Page 302, states:

"The provisions of statutes, charters and ordinances requiring competitive bidding in the letting of municipals contracts are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, *and they are enacted for the benefit of*

---

**2.** 61 O.S.1981 § 122:

Any taxpayer of the State of Oklahoma, or any bona fide unsuccessful bidder on a particular public construction contract, within ten (10) days after any such contract has been executed, is empowered to bring suit in the district court of the county where the work, or the major part of it, is to be done to enjoin the performance of such contract if entered into in violation of the provisions of this act.

*property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest.*" (Emphasis ours)

Cases from every jurisdiction examined support the necessity for discretion to be reposed in the public contracting authority. Even in states with a statute requiring municipal authorities to let a contract to the "lowest bidder", it has been held that such expression should be used in its logical and practical, rather than its strictly grammatical sense. Thus such words have been construed by the courts to mean "lowest and best" bidder, *Missouri Service Co. v. City of Stanbury*, 341 Mo. 500, 108 S.W.2d 25 (1937) or "lowest responsible" bidder, *Packard v. Hayes*, 94 Md. 233, 51 A. 32 (1902).

Oklahoma dealt with the concept of "lowest responsible bidder" as early as 1909 in *Hannan v. Bd. of Education*, 25 Okl. 372, 107 P. 646 (1909), stating:

"[B]y the phrase 'lowest responsible bidder,' as used in the statute, it is not intended to limit the power of the board to a simple examination of the different bids tendered without reference from whom they come, and blindly select the one solely from the consideration that it is the lowest in price, but it requires the board to select the bidder who, all things being considered, has ability to respond to the requirements of the contract having full regard to the subject-matter thereof. (Citations omitted) Or, as is said in the case of *Commonwealth ex rel. Snyder et al. v. Mitchell et al.*, 82 Pa. 343: "The word 'responsible,' as employed in the act, when applied to contracts, requiring for their execution, not only pecuniary ability; but also judgment and skill, imposes, not merely a ministerial duty upon the city authorities, such as would result did their powers extend no further than to ascertain whose was the lowest bid, and the pecuniary responsibility of the bidder and his sureties, but also duties and powers which are deliberate and discretionary. In this we concur

with the court below. For it is scarcely open to doubt but that the word under consideration, as it is used in the statute, means something more than pecuniary ability. In a contract, such as the one in controversy, the work must be promptly, faithfully and well done...." (Id at 654)

Again in *Flynn Const. Co. v. Leininger*, 125 Okl. 197, 257 P. 374 (Okl.1927) we examined the concept with this language:

"One of the special objects of the act is that 'all contracts for construction work upon the State highway system shall be let to the lowest responsible bidder.' ..."

"... in our opinion, its sole purpose is to obtain the best results at the lowest cost, the greatest value for the fewest dollars; in other words it is a means for making the best possible bargain, the means expressly adopted by the Legislature for obtaining such results."

. . . .

"The statute, section 12, supra, says: 'The lowest responsible bidder.' By using the word 'lowest' the Legislature evidently meant the fewest number of dollars; the dollar then is the unit of measure, and the quality of that which is purchased with the fewest number of dollars constitutes the bargain; but, as section 12, supra also says, 'responsible bidder.'"

. . . .

"It is thus made clear that responsibility of bidders, skill, good business principles, time for completion of the work are items or elements, all of which must necessarily be taken into consideration in judging the character and quality of the bargain obtained."

"Skill, responsibility, shortest possible period of time, other things being equal, are the things purchased, paid for with the people's money, and the fewer the dollars with which the same things may be purchased the better the bargain." (Id 257 P. at 378)

For some cases from other jurisdictions in accord see *J.N. Futia Co. v. Office of General Service*, 39 A.D.2d 136, 332 N.Y.S.2d 261 (1972); *Koich v. Cvar*, 111 Mont. 463, 110 P.2d 964 (1941); *Wilson v. City of New Castle*, 301 Pa. 358, 152 A. 102 (1930); *William v. City of Topeka*, 85 Kan. 857, 118 P. 864 (1911).

No case, however, has been presented, nor have we discovered one, which deals with the relationship between the holder of a Prequalification Certificate and a municipal authority which requires one. Does the award of such a certificate vest its holder with a property right to be the absolute recipient of the contract if it submits the low bid? We hold that it does not, and for the following reasons.

As noted above, the competitive bidding statutes are for the primary benefit of the taxpaying public, not the bidders. *McQuillen*, supra. There is a clear benefit to the public in enacting ordinances such as Tulsa's, in that bids by inexperienced, incompetent, or financially irresponsible contractors will not encroach upon the valuable time of the contracting authority in its contract-awarding process. But neither in the certificate nor ordinance authorizing same is there any assurance that the holder will be awarded the contract upon a low bid. Section 63(d) of the ordinance states:

"Such recommendation for issuance of a pre-qualification certificate shall certify that the applicant is qualified *to bid* upon one or more of the following classes or categories of public improvents...." (emphasis ours)

The statute (61 O.S.1981 § 117) certainly recognizes that the contract may go to another than the low bidder:

"If an award is made to other than the lowest bidder, the awarding public agency shall accompany its action with a publicized statement setting forth the reason for its action."

So although the ordinance (Section 64d) assures the contractor that his certificate will not be revoked except upon a hearing with notice, the rights granted by that certificate are only to bid on the job. Rollings' arguments that the Water Authority by refusing to award on the low bid simply avoided the revocation procedure are not well taken. Rollings had no property rights in Contract 5 until such time as it was or should have been determined to have been the lowest responsible bidder by the Board of Trustees of the Water Authority, and that event did not occur.

Although Rollings primarily urges that the Authority had no discretion in awarding the contract, it alternatively argues that the Authority abused that discretion in letting the contract to the second low bidder. We cannot agree. The Board's reasons for choosing the second low bidder were fully articulated in a public meeting of the Authority at which Rollings appeared by its officers and counsel. The presence of the ongoing contractual disputes with the plaintiff involving late performance and contested overruns in cost provided a supportable basis for the exercise of discretion in favor of the next low bidder.

We conclude that the Oklahoma Public Competitive Bidding Act of 1974 does afford a public body discretion in determining the lowest responsible bidder, even when the low bidder is holder of an ordinance-required Prequalification Certificate. We will not penalize the Water Authority for what we view as a semantic (not substantive) misstatement in its own justification for letting the contract as it did, but to be proper it appears that that "lowest and best" is out; "lowest responsible" is in. The Tulsa Metropolitan Water Authority did not abuse its discretion in awarding the contract to the second lowest bidder as the lowest responsible bidder in this case.

THE JUDGMENT OF THE DISTRICT COURT IS AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, SIMMS, WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., dissents.