**BUCKLEY CONSTRUCTION, INC.,**
Plaintiff–Appellant,

v.

**SHAWNEE CIVIC & CULTURAL DE-
VELOPMENT AUTHORITY; Charles
T. Henry; James Bradshaw; Dr. Joe
Taron; Clarke A. Bohan; Jim R. Hud-
gens, Defendants–Appellees,**

and

**Cecil Bernard, doing business as B &
B Builders, Defendant.**

No. 90–6158.

United States Court of Appeals,
Tenth Circuit.

May 14, 1991.

854

Clyde A. Lewis, Oklahoma City, Okl., for plaintiff-appellant.

Mack J. Morgan III of Crowe & Dunlevy, Oklahoma City, Okl., for defendants-appellees.

Randy Parsons and J. David Cawthon, Shawnee, Okl., for defendant.

Before ANDERSON and TACHA, Circuit Judges, and KANE,* District Judge.

KANE, Senior District Judge.

Plaintiff Buckley Construction, Inc. filed this civil action against defendants Shawnee Civic & Cultural Development Authority (the Authority), its trustees, and B & B Builders alleging, *inter alia*, that they conspired against the company in failing to award it a construction contract. The district court dismissed all claims pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.[1]

I.

The Authority is a public trust created pursuant to Oklahoma statute. *See* Okla. Stat. tit. 60, § 176 (1981). One of its purposes is to coordinate bidding on construction projects for the City of Shawnee, Oklahoma. In this capacity, the Authority is governed by the provisions of the Oklahoma Public Competitive Bidding Act of 1974 (OPCBA). *See* Okla.Stat. tit. 61, §§ 101–136 (1981).

In late 1988 and early 1989, the Authority placed advertisements in several trade magazines soliciting bids for construction of the "Heart of Oklahoma Exposition Center Phase 1." In response, Buckley Construction submitted a low bid of $815,237. B & B Builders submitted the second lowest bid of $819,000.

On April 12, 1989, Buckley Construction representatives attended a meeting with the project architect, exposition manager, Authority chairman and Shawnee city manager. After discussing the company's qualifications, these individuals told Buckley representatives they would recommend to the Authority that Buckley Construction be awarded the contract.

Later that month, the Authority awarded the contract to B & B Builders, the second lowest bidder. Buckley representatives were told the rejection was not due to any

* Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

negative aspects of the Buckley bid, but that B & B Builders received the contract because the Authority "knew what kind of contractor he [sic] was." Rec. Vol. I, doc. 1 at 14, ¶ 34. This lawsuit followed.

In the complaint, Buckley stated seven causes of action. They included: 1) restraint of trade under section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1; 2) monopoly under section 2 of the Sherman Act, 15 U.S.C. § 2; 3) procedural due process and equal protection violations brought pursuant to 42 U.S.C. § 1983; and 4) four state law causes of action for fraud, deceit, conspiracy, and promissory estoppel.

The Authority filed two different motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted both motions, thus dismissing all claims against the Authority.[2] B & B Builders then filed a motion to dismiss all claims based on the court's previous rulings. That motion was likewise granted.

## II.

■ We review the sufficiency of a complaint de novo and apply the same standard as the district court. *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986). "[W]e must take as true all well-pleaded allegations in the plaintiff's complaint...." *Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs*, 811 F.2d 1371, 1374 (10th Cir.1987). A complaint cannot be dismissed unless it appears beyond all doubt the plaintiff cannot prove any facts entitling him to relief. *Id.* at 1375 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

## III.

*Antitrust Claims*

■ Generally, a state's anticompetitive actions are immune from civil antitrust laws. *Parker v. Brown*, 317 U.S. 341, 350–

52, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943). "In creating this immunity, the Supreme Court recognized that the free market principles espoused in the Sherman Antitrust Act end where countervailing principles of federalism and respect for state sovereignty begin." *Traweek v. City & County of San Francisco*, 920 F.2d 589, 591 (9th Cir.1990) (citing *Parker*, 317 U.S. at 350–51, 63 S.Ct. at 313–14). Under certain circumstances, this immunity also applies to municipalities. *See Community Communications Co. v. City of Boulder*, 455 U.S. 40, 51, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982).

■ In order to qualify for *Parker*-type immunity, a municipality must demonstrate its anticompetitive activities "were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service.' " *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (quoting *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978)). Specifically, the municipality has the burden of showing the state policy under which it acted was "clearly articulated and affirmatively expressed." *Lafayette*, 435 U.S. at 410, 98 S.Ct. at 1135. A state policy meets these requirements when the empowering statute shows the anticompetitive action was contemplated. *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1120 (10th Cir. 1991).

■ This court has adopted a two-part test for evaluating municipal state action immunity. "First, the state legislature must have authorized the action under challenge. Second, the legislature must have intended to displace competition with regulation." *Id.* (citing *Oberndorf v. City & County of Denver*, 900 F.2d 1434, 1438 (10th Cir.), *cert. denied*, — U.S. —, 111

---

2. The district court determined Buckley had confessed the validity of the Authority's motion to dismiss with respect to the state law claims because that argument was never addressed in Buckley's opposition to the 12(b)(6) motion. Buckley now asserts the court should have ad-

dressed the issue *sua sponte*. We disagree and affirm the trial court's dismissal of those claims. *See O'Connor v. City & County of Denver*, 894 F.2d 1210, 1214 (10th Cir.1990) (This court will not consider arguments abandoned in the district court.).

S.Ct. 129, 112 L.Ed.2d 97 (1990)). Here, the challenged activity is the selection of a contractor other than that which submitted the lowest bid. This selection was made pursuant to the express policies found in the OPCBA. The act clearly contemplates anticompetitive activity. *See Mercy-Peninsula Ambulance, Inc. v. San Mateo County,* 791 F.2d 755, 756–58 (9th Cir.1986) (competitive bidding procedure which excluded some ambulance service providers had anticompetitive effect which was contemplated under statute). Moreover, not only does the statute mandate that contracts be awarded to the contractor determined to be the lowest *responsible* bidder, it also gives the public agency discretion to reject any or all bids if it determines that is in the best interest of the State of Oklahoma. *See* Okla.Stat. tit. 61, §§ 103, 119 (1981). The Authority acted within the scope of the public bidding statute when it awarded the project to a contractor who did not submit the lowest bid. Thus, the state action doctrine applies, rendering the Authority immune from suit.[3]

While acknowledging application of the OPCBA as a clear expression of state policy, Buckley asserts the Authority was not acting pursuant to the statute when it awarded this contract to B & B Builders. Instead, Buckley contends the Authority was acting in contravention of legislative goals. In essence, Buckley asserts that awarding a contract based on past affiliation with a contractor constitutes an abuse of the OPCBA and, therefore, the Authority was not acting pursuant to state policy as the *Lafayette* decision requires.

Once a municipality establishes it is entitled to state action immunity, the subjective motivation of the actors involved in the decisionmaking process should not come into play. *See City of Columbia v. Omni Outdoor Advertising, Inc.,* —— U.S. ——, —— – ——, 111 S.Ct. 1344, 1346–47,

113 L.Ed.2d 382 (1991) (holding there is no conspiracy exception to the state action doctrine); *Traweek,* 920 F.2d at 592–93; *Hancock Indus. v. Schaeffer,* 811 F.2d 225, 234 (3rd Cir.1987); *see also Consolidated Television Cable Serv., Inc. v. City of Frankfort,* 857 F.2d 354, 361–62 (6th Cir. 1988) (misapplication of otherwise clearly expressed state law does not result in denial of immunity), *cert. denied,* 489 U.S. 1082, 109 S.Ct. 1537, 103 L.Ed.2d 842 (1989). The availability of the immunity must be determined by looking to the objective standards which the *Parker* decision sets forth. *Llewellyn v. Crothers,* 765 F.2d 769, 774 (9th Cir.1985). This approach preserves the federalism principles which are the heart of the state action doctrine. *Id.; cf. Lease Lights, Inc. v. Public Serv. Co. of Okla.,* 849 F.2d 1330, 1334 (10th Cir.1988) ("The constitutional invalidity of the attempted state regulation is not an appropriate basis for disregarding state action immunity."), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 817, 102 L.Ed.2d 807 (1989).

> State laws intended to displace the antitrust laws may delegate to public agencies or officials the power to act, decide, or regulate in order to achieve anticompetitive results. Of course, state law "authorizes" only agency decisions that are substantively and procedurally correct. Errors of fact, law or judgment by the agency are not "authorized," and state tribunals will normally reverse erroneous acts or decisions. If the antitrust court demands unqualified "authority" in this sense, it will inevitably become the standard reviewer of governmental agencies whenever it is alleged that the agency, though possessing the power to engage in the challenged conduct, has exercised its power erroneously.

*Llewellyn,* 765 F.2d at 1334 (quoting Areeda, *Antitrust Immunity for "State Ac-*

---

**3.** As an alternative theory, Buckley asserts the State of Oklahoma is neutral regarding local bidding procedures, and, therefore, state action immunity does not attach. *See Community Communications Co.,* 455 U.S. at 55, 102 S.Ct. at 843 ("But plainly the requirement of 'clear articulation and affirmative expression' is not satis-

fied when the State's position is one of mere *neutrality* respecting the municipal actions. . . .") (emphasis in original). We disagree. The OPCBA is a comprehensive statute which clearly evinces the intent of the legislature to control bidding procedures.

*tion" After Lafayette*, 95 Harv.L.Rev. 435, 449–50 (1981)); *see also City of Columbia*, 59 U.S.L.W. at 4263 (court rejecting any interpretation of the Sherman Act which allows plaintiffs to look behind the actions of state sovereigns). Any such abuses of state policy should be left for state courts to correct. *Llewellyn*, 765 F.2d at 774.

In this case, it is clear the state legislature authorized the Authority to solicit bids and make a determination as to which contractor was best for the job. The statute clearly allows public agencies to choose a contractor other than the lowest bidder. Because the Authority's actions meet the two-prong test for evaluating state action immunity, the motion to dismiss was properly granted.[4]

### 42 U.S.C. § 1983 Claims

In order to state a cause of action under section 1983, a plaintiff must allege both the deprivation of a federal right and that the alleged action was taken under color of state law.[5] *Jacobs, Visconsi & Jacobs Co.*, 927 F.2d at 1115. The parties do not dispute that the Authority acted under color of state law. Therefore, we need only address whether Buckley Construction was deprived of a federal right when B & B Builders was awarded this construction project.

### 1. Procedural Due Process

Buckley contends it was denied procedural due process when the Authority arbitrarily and capriciously awarded the construction project to B & B Builders. As a threshold matter, however, Buckley must show it had a liberty or property interest sufficient to invoke procedural protections.

*Curtis*, 811 F.2d at 1375. In order to establish a property interest in the contract award, Buckley must have a " 'legitimate claim of entitlement' " to it. *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Here, we look to Oklahoma law to determine the existence of this alleged entitlement. *Jacobs, Visconsi & Jacobs Co.*, 927 F.2d at 1116–17.

There is significant disagreement in the federal courts on the question whether an unsuccessful bidder on a state contract possesses a constitutionally protected property interest. *See Curtis*, 811 F.2d at 1376 (acknowledging disagreement and citing numerous cases). The majority holds that a disappointed bidder generally does not possess a property interest when the contract is not actually awarded to him. *See, e.g., Sowell's Meats & Servs., Inc. v. McSwain*, 788 F.2d 226, 228 (4th Cir.1986); *Coyne–Delany Co. v. Capital Dev. Bd.*, 616 F.2d 341, 343 (7th Cir.1980). In contrast, the minority, led by *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), has recognized the potential for a property interest "of relatively narrow dimension." *Id.* at 1131; *see also L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 524 (8th Cir.1985) (acknowledging potential property interest under Arkansas law). This circuit has not expressly embraced either position.[6]

In each of the cases addressing this question, the courts necessarily focused on whether the state law in question conferred a property interest. *See also,*

---

**4.** In its brief on appeal, Buckley asserts the Authority determined it was the lowest responsible bidder, then refused to award the company the contract. *See* Appellant's Brief at 13. That is not what the complaint alleges. Rather, the complaint states a group associated with the project itself recommended the bid be accepted. *See* Rec. Vol. I, doc 1 at 13, ¶ 31.

**5.** Section 1983 states, in part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988).

**6.** In *Curtis*, this court considered an unsuccessful bidder's procedural due process claim. The court determined, without deciding, that even if the analysis of the *Three Rivers* decision was adopted, the bidder had no constitutionally protected interest under state law. 811 F.2d at 1377–84.

*e.g., Jacobs, Visconsi & Jacobs Co.*, 927 F.2d at 1116–17 (reviewing state law to determine existence of property interest). To this extent, the question whether entitlement exists should be decided on a case-by-case basis through review of the implicated state law. *See Metric Constructors, Inc. v. Gwinnett County*, 729 F.Supp. 101, 102 (N.D.Ga.1990) ("[T]he position most faithful to the Supreme Court's decision in *Roth* is that a constitutionally protected property interest exists if acknowledged by applicable state law."). Here, Buckley relies on the Oklahoma Supreme Court's decision in *Rollings Construction Inc. v. Tulsa Metropolitan Water Authority*, 745 P.2d 1176 (Okla.1987), as creating a property interest.

Section 103 of the OPCBA provides that "[a]ll public construction contracts shall be let and awarded to the lowest responsible bidder...." Okla.Stat. tit. 61 § 103 (1981). In *Rollings*, the Oklahoma court considered the meaning of the phrase "lowest responsible bidder" for purposes of applying the statute. Specifically, the court considered whether issuance of a "Contractor's Prequalification Certificate" prohibited the water authority from awarding the project to a contractor other than the lowest bidder. 745 P.2d at 1176.

The court recognized the discretion to be afforded public trusts in awarding contracts, stating:

[B]y the phrase 'lowest responsible bidder,' as used in the statute, it is not intended to limit the power of the board to a simple examination of the different bids tendered without reference from whom they come, and blindly select the one solely from the consideration that it is the lowest in price, but it requires the board to select the bidder who, all things being considered, has ability to respond to the requirements of the contract having full regard to the subject-matter thereof. (Citations omitted.) Or, as is said in the case of *Commonwealth ex rel. Snyder et al. v. Mitchell et al.*, 82 Pa. 343: "The word 'responsible,' as employed in the act, when applied to contracts, requiring for their execution, not only pecuniary ability, but also judgment and skill, imposes, not merely a ministerial duty upon the city authorities, such as would result did their powers extend no further than to ascertain whose was the lowest bid, and the pecuniary responsibility of the bidder and his sureties, but also duties and powers which are deliberate and discretionary."

*Id.* at 1178 (quoting *Hannan v. Board of Educ.*, 25 Okl. 372, 107 P. 646, 654 (1909)). Thus, the Authority retains broad discretion to determine which contractor is the lowest *responsible* bidder. In making this determination, the Authority is not limited to looking at bids alone. Rather, the term "responsible bidder" encompasses a variety of factors which combine to allow the Authority to choose the contractor who is best able to carry out the requirements of the contract.

Moreover, in *Rollings*, the court made clear that the OPCBA was established "for the primary benefit of the taxpaying public, not the bidders." *Rollings*, 745 P.2d at 1179. This is further proof that public trusts in Oklahoma are not limited to awarding contracts to the lowest bidder. They have considerable discretion to determine who is the best overall contractor for the job. Under *Rollings*, Buckley "had no property rights ... until such time as it was or should have been determined to have been the lowest responsible bidder...." *Id.*

Buckley asserts it should have been determined the lowest responsible bidder, thus triggering a property interest. In paragraph thirty-five of the complaint, Buckley alleges, "Defendant's [sic] action in rejecting Plaintiff's bid and awarding the contract to the second bidder was based upon arbitrary, capricious, unlawful, and irrelevant considerations and unfairly deprived Plaintiff of due process...." Rec. Vol. I, doc. 1 at 14. This conclusory paragraph does not allege facts sufficient to avoid a Fed.R.Civ.P. 12(b)(6) motion. *See Metric Constructors*, 729 F.Supp. at 103 (plaintiff must provide specificity as to facts underlying its allegations in order to overcome Fed.R.Civ.P. 12(b)(6) motion). Buckley's complaint does not allege any

facts indicating why the Authority, in its discretion, should have determined Buckley had a better bid in light of all the factors set forth in the *Rollings* decision. Therefore, we reject this argument and hold Buckley did not have a property interest sufficient to maintain a procedural due process claim.

2. *Equal Protection*

The equal protection clause is triggered when the government treats someone differently than another who is similarly situated. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Buckley asserts the Authority inappropriately distinguished between classes of contractors it knew personally and those it did not. The district court rejected this argument, ruling that Buckley's complaint failed to allege discrimination sufficient to invoke the equal protection doctrine. We agree.

In the complaint, Buckley alleges the contract was awarded to B & B Builders because the Authority "knew what kind of contractor he [sic] was." Rec. Vol. I, doc. 1 at 14, ¶ 34. We agree with the district court that this statement does not allege a classification sufficient to invoke the equal protection clause. At best, the statement reveals the Authority took this action against Buckley as an individual contractor and in favor of B & B Builders as an individual contractor. The state action did not single out any class of contractors, nor has Buckley alleged "an element of intentional or purposeful discrimination" in the application of the bidding procedures so as to invoke the clause as an individual. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) (equal protection clause could be invoked where there is unequal application of a statute if intentional discrimination is shown).

Furthermore, the Authority's decision is rationally related to its goal of developing and coordinating construction projects for

the city. In this regard, because neither a suspect class nor fundamental right is involved, the classification need only have "a reasonable basis to withstand constitutional challenge." *See Jacobs, Visconsi & Jacobs Co.*, 927 F.2d at 1119 (footnote omitted). Awarding a contract based on the reasonable assessment that the contractor is known to the city and can perform the job is rationally related to the Authority's goals.

Buckley's argument is one of fairness, not class distinctions.[7] "Where, as here, a statute requires official action discriminating between a successful and an unsuccessful candidate, the required action is not a denial of equal protection since the distinction is based on a permissible classification." *Snowden*, 321 U.S. at 8, 64 S.Ct. at 401. The Authority did not reject a class of contractors in awarding the bid; it only rejected one.

### IV.

Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

---

7. Buckley admits it has found no authority supporting its classification argument. Neither has the court. We do not believe the cases Buckley cites, based on residency classifications, are dispositive.