**SOUND AIRCRAFT SERVICES, INC.,** Shoreline Aviation, Inc., JIB, Inc., doing business as Action Airlines, Plaintiffs–Appellees,

v.

**TOWN OF EAST HAMPTON,** Town Board of the Town of East Hampton, Thomas Knobel, Individually, Thomas Knobel, As Councilperson of the Town of East Hampton, Nancy McCaffrey, Individually, Nancy McCaffrey, As Councilperson of the Town of East Hampton, Leonard Bernard, Individually, Leonard Bernard, As Councilperson of the Town of East Hampton, Defendants–Appellants,

Bernard ("Ben") Krupinski, Aviation Resources, Inc., doing business as East Hampton Airlines, Myers Aero Service, Inc., Myers Aero Fuel, Inc., Defendants.

Docket No. 98–9339.

United States Court of Appeals, Second Circuit.

Argued June 23, 1999.

Decided Sept. 22, 1999.

Richard C. Cahn, Cahn, Wishod & Knauer, LLP, Melville, NY (Eugene L. Wishod, Cahn, Wishod & Knauer, LLP, Melville, NY, of counsel), for Defendants–Appellants.

Paul R. Levenson, Kaplan Gottbetter & Levenson, LLP, New York, NY, for Plaintiffs–Appellees.

Before: MINER, JACOBS, and PARKER, Circuit Judges.

MINER, Circuit Judge:

Defendants-appellants the Town of East Hampton (the "Town"), the Town Board of the Town of East Hampton (the "Town Board") and Thomas Knobel, Nancy McCaffrey and Leonard Bernard, individually and as members of the Town Board (the "Town Board members" or "members") appeal from a portion of an order entered in the United States District Court for the Eastern District of New York (Platt, J.) in an action brought against them and others by plaintiffs-appellees Sound Aircraft Services, Inc. ("Sound Aircraft"), Shoreline Aviation, Inc. ("Shoreline"), and JIB, Inc. d/b/a Action Airlines ("Action") (collectively, "Sound"). The action arises out of the award of a long-term hangar lease at the Town of East Hampton Airport (the "Airport"). The portion of the order appealed from rejects the defense of qualified immunity raised in a motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims. The Town Board members contend that the district court improperly considered the members' intent as relevant to their qualified immunity defense. Sound argues that the Town Board members' conduct violated clearly established rights of Sound to equal protection of the laws and to the benefit of the protection of an anti-discrimination provision of the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47107(a).

For the reasons that follow, we vacate the order and remand for further proceedings consistent with this opinion.

## BACKGROUND

According to the allegations of the complaint, the East Hampton Airport is a commercial service airport owned by the Town, and its operations are governed by the Town Board. Plaintiff-appellee Sound Aircraft is a "fixed base operator" that provides a broad range of services to owners and operators of aircraft at the Airport, including aircraft ramp services, parking space rental, aircraft maintenance and repair and fuel sales. Plaintiffs-appellees Shoreline and Action are passenger carriers serving the Airport that exclusively utilize Sound as their fixed base operator.

Defendants Myers Aero Fuel, Inc. and Myers Aero Service Inc. (collectively, "Myers") compete with Sound for fuel sales and other fixed base operator services at the Airport. Defendant Bernard Krupinski is a principal in Myers Aero Fuel. Defendant Aviation Resources, Inc. ("Aviation Resources"), also owned or controlled by Krupinski or members of his family, operates a passenger carrier service that competes with Shoreline and Action.

In early 1996, the Town solicited bids for a proposed long-term lease of hangar space at the Airport. Factors to be considered in awarding the bid included the amount of rent offered, the degree of proposed aeronautical usage of the hangar and the experience of the bidders. Shoreline and Sound joined in a bid (the "Shoreline/Sound Aircraft bid"), which proposed that Sound would provide fixed base operator services at the hangar to Shoreline and others. Aviation Resources also submitted a bid. Plaintiffs allege that, of the bids submitted to the Town, the Shoreline/Sound Aircraft bid offered the highest amount of rent, the most extensive use of the hangar and more experienced operators.

After the bid submission deadline passed, the Town Board allegedly permitted Aviation Resources to amend its bid to increase the offered amount of rent and to propose a broader array of operating services to mirror the Shoreline/Sound bid. Although Sound Aircraft and Shoreline were not offered an opportunity to amend their bid or respond to the revised Aviation Resources bid, the amended bid fell short of the Shoreline/Sound Aircraft bid in terms of the offered amount of rent, the bidders' qualifications and experience and the anticipated aeronautical use of the han-

gar. Nonetheless, the Town Board subsequently awarded the lease to Aviation Resources. Under the lease, entered into on February 27, 1997, Aviation Resources was awarded exclusive use and occupancy of the hangar for twenty years with a ten year renewal option.

In connection with Airport renovations and improvements funded under a grant from the Federal Aviation Administration (the "FAA"), the Town Board required a reallocation of Sound's allotted commuter ramp space at the Airport. Under the provisional plan, the Town Board drastically reduced Sound's ramp space and correspondingly increased Myers' ramp space. The proposed permanent reallocation would similarly decrease Sound's ramp space and increase that of Myers.

The complaint also alleges that at the direction of the Town and the Board, the Airport manager discriminated in favor of Myers and Aviation Resources by repeatedly permitting them to use official airport radio frequencies to advertise their business. Additionally, the manager advised one airline to use Myers' fixed base services.

In November of 1997, Sound filed a complaint in the United States District Court for the Eastern District of New York asserting six claims against various defendants. Sound's primary claim was based on 42 U.S.C. § 1983 and asserted violations of its rights to substantive due process, equal protection and the benefits of the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 47107(a). This claim was predicated on allegations that the Town, the Town Board and the three Town Board members, who constitute the Republican majority of the Town Board, engaged in a course of conduct that was intended to advance the business interests of the defendants, to injure or destroy the plaintiffs' ability to compete and to drive Sound out of business. Sound further claimed that this course of conduct was influenced personally and politically by Krupinski.

Sound alleged that the Town and the Town Board members acted on the basis of "political and personal favoritism" by (1) permitting Aviation Resources to amend its bid, (2) awarding the lease to Aviation Resources despite the superior bid of Shoreline/Sound Aircraft, (3) reallocating commuter ramp space to Sound's detriment, (4) diverting business away from Sound based on the reallocated ramp space, and (5) encouraging the Airport manager, a cousin of Krupinski's wife, to implement and enforce rules and policies at the Airport resulting in disparate treatment of plaintiffs.

The complaint also contained five ancillary state claims. In its second claim, Sound Aircraft asserted that by reallocating the commuter ramp space at the Airport, the Town and the Town Board breached Sound Aircraft's lease of ramp space and space adjacent to the hangar. Sound Aircraft's third claim sought recompense from Krupinski, Aviation Resources, and Myers Aero Fuel for their allegedly tortious role in interfering with Sound Aircraft's lease of ramp space.

In their fourth claim, Sound Aircraft, Shoreline, and Action sued for breach of a contract between the FAA and the Town and the Town Board under the theory that the plaintiffs were third-party beneficiaries of the contract and that the Town and the Town Board breached the contract through their discriminatory conduct. The fifth claim alleged that Krupinski, Aviation Resources and Myers Aero Fuel had tortiously interfered with the contract between the Town, the Town Board and the FAA. The sixth and final count of the complaint asserted a claim on behalf of Sound Aircraft and Shoreline against Krupinski, Aviation Resources, and Myers Aero Fuel for the loss of the business opportunities occasioned by the award of the hangar lease to Aviation Resources.

In a Memorandum and Order dated September 10, 1998, the district court addressed two motions to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6). The Town, the Town Board, and the three of the Town Board members in their official capacities moved to dismiss the first, second, and fourth counts of the complaint for failure to state a claim; additionally, the Town Board members moved in their individual capacities to dismiss all § 1983 claims against them on the ground that their actions were shielded by qualified immunity. In the second motion, Krupinski, Aviation Resources and Myers moved to dismiss the § 1983 claim as it pertained to them.

The court began by addressing the motions to dismiss the first count of the complaint for failure to state a claim. The court granted the motion to dismiss the § 1983 claim to the extent that it was grounded in a violation of substantive due process because Sound, as a bidder, had no protected property right in receiving the award of the contract. With regard to the other two asserted bases of § 1983 liability, however, the district court determined that a material issue of fact existed as to violations alleged pursuant to the Equal Protection Clause and 49 U.S.C. § 47107(a) and consequently declined to dismiss those claims.

As to the state law claims, the court ruled that Sound Aircraft had sufficiently stated a claim for breach of the lease. It determined that Sound Aircraft, Shoreline, and Action were not third-party beneficiaries of the contract between the Town, the Town Board and the FAA, however, and thus dismissed the fourth claim.

The only rulings germane to this appeal are the district court's determinations on the issue of qualified immunity. After reciting the principle that government officials in their personal capacities are immune from suits for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," the court denied the motion to dismiss on the basis of qualified immunity. With respect to the viability of the qualified immunity defense to plaintiffs' § 1983 Equal Protection theory, the court reasoned as follows:

> In the instant case, plaintiffs contend that their constitutional right to equal protection was violated because the Town Defendants allowed the Private Defendants to amend their bid but did not allow plaintiffs the same opportunity and plaintiffs were not afforded an opportunity to be heard with respect to the amendment. An issue of fact exists with respect to Knobel's, McCaffrey's, and Bernard's motivation and whether their actions were reasonable in light of Krupinski's alleged political influence.

This appeal followed.

## DISCUSSION

### I. *Qualified Immunity*

■ "A district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *see Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). We review *de novo* a district court's denial of a motion to dismiss on qualified immunity grounds. *See Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998); *Jemmott v. Coughlin*, 85 F.3d 61, 66 (2d Cir.1996).

The sole issue presented for review is whether the Town Board members are entitled to qualified immunity on appellants' § 1983 Equal Protection claim. The district court concluded that an issue of fact existed with regard to the motives of the Town Board members and whether their actions relating to the amended bid were reasonable in light of Krupinski's alleged political influence. The Town Board members contend that the district court erroneously looked to the intent of the members in assessing their qualified immunity defense, asserting that the prop-

er inquiry would focus solely on whether their conduct violated any clearly established constitutional or federal rights.

■ Qualified immunity serves important interests in our political system. It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct. *See Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1593, 140 L.Ed.2d 759 (1998) (reiterating that qualified immunity protects a defendant official where that official " 'could not reasonably be expected to anticipate subsequent legal developments, nor ... fairly be said to "know" that the law forbade conduct not previously identified as unlawful.' ") (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Moreover, qualified immunity serves the "strong public interest in protecting public officials from the costs associated with the defense of damages actions .... [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Id.* 118 S.Ct. at 1592–93 & n. 12 (quotations omitted).

■ Qualified immunity shields " 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 1592 (quoting *Harlow,* 457 U.S. at 817–18, 102 S.Ct. 2727). Because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come into play. *See id.* 118 S.Ct. at 1592. Thus, qualified immunity may shield a defendant from liability "even when the official conduct is motivated, in part, by hostility to the plaintiff." *Id.* at 1593. The district court therefore erred in rejecting the individual defendants' qualified immunity defense on the basis of "issue[s] of fact ... with respect to [their] motivation."

Because of this error in the district court's disposition, we vacate the order of the district court to the extent that it rejects the defense of qualified immunity and remand for further proceedings. For the guidance of the district court, we comment briefly on the nature of the proceedings that the district court should undertake on remand.

## II. *Matters to be Considered on Remand*

### A. Order of Consideration

If the district court deems it appropriate, it may first "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* —— U.S. ——, ——, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (quotation omitted); *see County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998); *see also Horne v. Coughlin,* 178 F.3d 603, 604 (2d Cir.1999) (in case involving defense of qualified immunity, constitutional issue may be addressed first when there is a "danger of sustained uncertainty" as to whether the facts of the case constitute a constitutional deprivation); *Wilkinson v. Russell,* 182 F.3d 89, 103 n. 7 (2d Cir.1999) (finding that there was a danger of sustained uncertainty pursuant to *Horne* and addressing the constitutional issue first). This order of procedure would serve a dual purpose: it "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit," *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), and "promotes clarity in the legal standards for official conduct." *Wilson,* 119 S.Ct. at 1697. If the threshold determination reveals a possible constitutional violation, the court should then assess whether the law violated was clearly established at the time of the alleged violation. If the district court decides to

proceed in this manner, it should insist on a full briefing of the constitutional issues by the parties.

## B. Equal Protection

Sound alleges a denial of equal protection actionable under § 1983 because the Town Board members treated Sound differently from a similarly-situated fixed base operator. Specifically, Sound argues that the Town Board's award of the hangar lease, allocation of commuter ramp space and enforcement of Airport regulations were motivated by political favoritism toward Sound's business competitors and thereby violated Sound's rights to equal protection of the laws.

■ A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir.1988). It is not at all clear that Sound has stated an Equal Protection claim.

■ Although Sound alleges that it was treated differently from another fixed base operator, generalized allegations do not make out an equal protection claim. *See Crawford–El*, 118 S.Ct. at 1594 ("When intent is an element of a constitutional violation ... the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff. . . . ") For a court to assess a qualified immunity defense, the specific right allegedly violated must be properly framed. *See, e.g., Young v. County of Fulton*, 160 F.3d 899, 902–03 (2d Cir.1998) (district court's formulation of whether there was a clearly established right to visitation for a non-custodial parent properly framed as whether there is a

right to a pre-termination hearing before suspension of visitation rights); *LaBounty v. Coughlin*, 137 F.3d 68, 74 (2d Cir.1998) (district court's formulation of whether there is a "right to be free from crumbling asbestos" properly framed as whether there is right to be free from deliberate indifference to serious medical needs). While Sound's complaint advances grievances that might bring it within the realm of the Equal Protection Clause, on remand the district court must frame the specific right allegedly violated. If appropriate, the district court should accord Sound an opportunity to amend its complaint to assist the court in this regard.

Various factors relating to the Town Board members' decisionmaking process should be considered in the equal protection inquiry. For example, the Town Board may have had discretion to award the contract to a party other than the lowest bidder. In *Curtis Ambulance of Florida, Inc. v. Board of County Commissioners*, 811 F.2d 1371, 1384–85 (10th Cir. 1987), the County Commissioners of Shawnee, Kansas awarded a contract for ambulance services to an entity that did not submit the lowest bid. Plaintiffs, the unsuccessful low bidder, alleged, among other things, violations of equal protection based on arbitrary application of county resolutions requiring that certain contracts be awarded to the lowest bidder. In upholding the award, the Tenth Circuit concluded that the resolutions gave the Commission discretion to award the contract and did not require that the contract be awarded to the lowest bidder. *See id.* at 1384–85.

Similarly, it is conceivable that the Town Board may have made a reasonable assessment in awarding the contract to a party with whom it had prior dealings. In *Buckley Construction, Inc. v. Shawnee Civic & Cultural Development Authority*, 933 F.2d 853, 859 (10th Cir.1991), the court upheld the award of a construction contract to the second-lowest bidder, finding that the authority awarding the contract did so by

favoring one individual contractor over another. The award "did not single out any class of contractors, nor [did the lowest bidder allege] an element of intentional or purposeful discrimination in the application of the bidding procedures so as to invoke the [Equal Protection] clause as an individual." *Id.* at 859 (quotation omitted); *cf. Image Carrier Corp. v. Beame,* 567 F.2d 1197, 1203 (2d Cir.1977) (city policy requiring city contractors to employ union labor had a rational basis and therefore did not constitute denial of equal protection).

Alternatively, this case may be governed by our decision in *Brady v. Colchester,* 863 F.2d 205 (2d Cir.1988). In *Brady,* after being unable to obtain a zoning designation that would have allowed them to rent a property to the Borough of Colchester, plaintiffs sued, claiming violations of, *inter alia,* their rights to due process and equal protection. *See id.* at 208, 211–16. The plaintiffs presented evidence on summary judgment that the zoning board's refusal to grant them a permit was based on "purely political and improper reasons," *id.* at 208, and argued that

> the Republican-controlled Town of Colchester and interested town officials had conspired to deny them a building permit, a zoning permit, and the necessary certificates of occupancy to which they were legally entitled, solely in order to prevent them from renting the first floor of the subject property to the Democratically-controlled Borough of Colchester.

*Id.* at 209.

The district court in *Brady* granted summary judgment to defendants, dismissing all of the plaintiffs' claims, but we reversed on the plaintiffs' substantive due process and equal protection claims. *See id.* at 211–17. With regard to the equal protection claim, we noted that the plaintiffs had presented sufficient evidence to survive a summary judgment motion, "in light of the record evidence ... suggest[ing] that ... [defendant's] actions may have been wholly unwarranted under the law." Notably, plaintiffs in *Brady*

specified the laws which had been improperly enforced against them, namely state building codes and town zoning regulations. Additionally, at the summary judgment stage, the record contained specific facts from which constitutional malice could be inferred. *Id.* at 208, 216–17.

Of course, in the current procedural stance and on the present record, we cannot ascertain whether plaintiffs' allegations rise to the level of a denial of Equal Protection. Accordingly, we leave this question for the district court on remand.

### C. 49 U.S.C. § 47107(a)

Sound alleges a violation of their right, pursuant to 49 U.S.C. § 47107(a), to be free from disparate treatment because the Town Board members discriminated against Sound during the bidding process. The district court concluded that the alleged violations, if proved, may constitute unfair discrimination giving rise to a § 1983 claim.

Section 47107(a) of Title 49 prohibits certain forms of discrimination among competing fixed base operators and air carriers at airports receiving federal funds and requires recipients of federal funds to furnish contractual assurances that they will refrain from such discrimination. Although the statute mandates that the Secretary of Transportation may approve grants to federally funded airports only upon written assurance that the airport operator will comply with non-discrimination provisions, we have previously concluded that no private right of action existed under similar provisions. *Western Air Lines v. Port Auth. of N.Y. & NJ,* 817 F.2d 222, 225 (2d Cir.1987) (rejecting the argument that the predecessor to 49 U.S.C. 47107(a), 49 U.S.C.App. § 2210(a), created a private right of action). *See also Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97–98 (2d Cir.1986) (no implied private right of action under 49 U.S.C.App. § 1305(a), which established the federal government's sphere of power

over the states in areas of interstate air transportation or 49 U.S.C.App. § 1349(a) which provided that "[t]here shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended"); *County of Westchester v. Town of Greenwich,* 745 F.Supp. 951, 955 (S.D.N.Y.1990) (no private right of action under 49 U.S.C.App. § 1304, which provided that "[t]here is recognized and declared to exist in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States"). Additionally, the Eighth Circuit has found that no private right of action exists under the very provision at issue here. *See Four T's, Inc. v. Little Rock Mun. Airport Comm'n,* 108 F.3d 909, 915 (8th Cir.1997). On remand, we invite the district court to reconsider, in light of the foregoing, its decision that 49 U.S.C. § 47107(a) provides Sound with a federal right that may serve as a basis for its § 1983 claim.

### D. Clearly Established Law

▆▆▆▆ Only after determining "whether the plaintiff has alleged the deprivation of an actual constitutional right at all" should the district court "proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson,* 119 S.Ct. at 1697 (quotation omitted). Defendants will be shielded by qualified immunity unless " '[t]he contours of the right [are] ... sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [T]he unlawfulness must be apparent.' " *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alterations and omissions in original). To determine whether a particular right was clearly established at the time the defendants acted, the district court should consider "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the [Second

Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (quotation omitted); *see, e.g., Bruneau v. South Kortright Cent. Sch. Dist.,* 163 F.3d 749, 755–56 (2d Cir.1998) (school official entitled to qualified immunity because at time of alleged incident there existed no clear right to be free from peer-on-peer sexual harassment), *cert. denied,* —— U.S. ——, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999).

### CONCLUSION

The portion of the order of the district court denying defendants' motion to dismiss on the basis of qualified immunity is vacated, and the case is remanded for further proceedings in accordance with this opinion.